# *UNITED STATES DISTRICT COURT FOR THE*
# *NORTHERN DISTRICT OF GEORGIA, ATLANTA DIVISION*



FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

JUN 1 2 2013

JAMES N. HATTEN, Clerk
By:
Deputy Clerk

*JAMES A WILLIAMS TRUST*
*c/o Trustee PETER PAPOULIAS*
*4175 Breckenridge Court*
*Alpharetta, Georgia 30005*
*Tel:404-704-0898*
*peterpapoulias@hotmail.com*

| | |
|---|---|
| *JAMES A WILLIAMS TRUST* | ) *COMPLAINT AND MEMORANDUM* |
| | ) *IN SUPPORT OF AN IMMEDIATE* |
| | ) *ORDER FOR RELIEF* |
| *Plaintiff,* | ) |
| | ) Court case # **1:13-CV-1956** |
| *v.* | ) |
| | ) |
| *FIFTH THIRD BANK, et al;* | ) |
| | ) |
| | ) |
| *Defendant(s),* | ) |
| | ) |

### *COMPLAINT AND MEMORANDUM*
### *IN SUPPORT OF AN IMMEDIATE ORDER FOR RELIEF*

Comes now plaintiff James Williams, real party in interest and owner/beneficiary for the Fifth Third Bank account #7460552230 and #7460471248 in the name JAMES A WILLIAMS TRUST, for his causes of action against Fifth Third Bank, et al., states and alleges as follows:

**INTRODUCTION:**

**1.** This action for an immediate order for relief and for damages due to the negligent debiting of $214,000.00 from the JAMES A WILLIAMS TRUST commercial checking account #7460552230 by the Defendant(s).

**2.** The Defendant(s) representatives P. Brian Moore, Jermain L. Pettis, Kimberly R. Love, Troy Smith, Adam Hipple and DaQuita Irons acting in the course and scope of their employment at FIFTH THIRD BANK through their acts and omissions knowingly, consciously, wrongly, without compensation and without due process of law have effected a taking of property from the Plaintiff.

**JURISDICTION AND VENUE:**

**3.** This action for an immediate order for relief and damages is predicated on the provisions of the Constitution and Statutes of the United States, the legal and equitable jurisdiction of this Court, the principles of common law, and this Court's concurrent and pendant jurisdiction.

**4.** This Court has jurisdiction over the Plaintiffs' claims under Article III of the United States Constitution and the Fifth Amendment thereto. This Court has jurisdiction over Plaintiffs' property

3

43  *rights under the foregoing citations and, in addition, pursuant to Northern District of Georgia*
44  *Local Rule 65.1, 28 USC §§1331, 1343, and the numerous case law stated herein.*

45  *5.       Venue is proper in this Court under Title 28 U.S.C. §1391(b) (2). The substantial part of the*
46  *property, and the acts related to such property subject to Plaintiffs' claims, occurred or was*
47  *situated in this Northern District of Georgia, Atlanta Division at all times relevant.*

48  **THE PARTIES:**

49  **6.**       *Plaintiff, affiant, JAMES A WILLIAMS TRUST is a District of Columbia business trust*
50  *organization (Federal Tax #98-6061213) having its principal place of business in Canada at 906-*
51  *545 SHERBOURNE ST., TORONTO, ONTARIO M4X 1W5 and a second place of business in the*
52  *U.S. at 4175 BRECKENRIDGE COURT, ALPHARETTA, GEORGIA 30005. The beneficiary/owner*
53  *James Williams operates the business out of the Canadian location and the Trustee Peter Papoulias*
54  *operates the business out of the U.S. location.*

55  *7.       In November of 2012, the Trustee, Peter Papoulias on the direction of the owner/beneficiary*
56  *James Williams opened a business checking account and personal checking account with FIFTH*
57  *THIRD BANK, 3155 Old Milton Parkway, Alpharetta, Georgia 30009.*

58  **8.**       *Defendant(s) FIFTH THIRD BANK, et al. is a U.S. regional banking corporation,*
59  *headquartered at 38 Fountain Square Plaza, Cincinnati, OH 45263. The commercial office involved*
60  *in this action is located at the following address: Fifth Third Bank – Buckhead Sovereign Building;*
61  *3344 Peachtree Road. Suite 800; Atlanta, Georgia, 30326; Phone: 404-279-4567.*

62  **FACTUAL CONTENTIONS APPLICABLE TO ALL CAUSES OF ACTION:**

63  **9.**       *The attached exhibit #1 "A Special Action for Remedy Ex Necessitate Legis for Commercial*
64  *Injury, Ultra Vires Acts, Criminal Conversion, Fraudulent Mis-representation" is incorporated by*
65  *reference as though fully stated herein **(see exhibit #1)**. For proof of delivery see **(exhibit #20)**.*

66  **10.**       *The defendant(s) were granted ten (10) days to controvert the statements and/or claims*
67  *made by the Plaintiff by executing and delivering a verified response point by point, in affidavit*
68  *form, sworn and attested to, signed by Defendant(s) with evidence in support.*

69  **11.**       *The Defendant(s) having failed to meet the conditions specified on lines 462 – 472 of exhibit*
70  *#1 and having failed to provide a valid response the Defendant(s) are now in default. Since the*
71  *defendant(s) admitted the statements and claims by TACIT PROCURATION, all issues are deemed*
72  *settled RES JUDICATA, STARE DECISIS and COLLATERAL ESTOPPEL and as a result,*
73  *JUDGMENT BY ESTOPPEL and not subject to appeal. The Defendant(s) may not argue,*
74  *controvert, or otherwise protest the finality of the administrative findings in any subsequent*
75  *process, whether administrative or judicial.*

76  **12.**       *On May 24, 2013 the Plaintiff received a letter from Adam Hipple, Corporate Investigation*
77  *for FIFTH THIRD BANK. **(see exhibit #2)**.*

78  **13.**       *The letter is scandalous, vexatious and intellectually vacuous:*

4

*i)* *"These items were returned by the bank they were drawn on..." This statement further evidences the ongoing malice and egregious conduct of the bank. The checks in the form of Image Cash Letters that the Plaintiff had deposited were drawn on the accounts of the issuer/drawer not on the bank/drawee themselves. Anyone that has ever written a check understands this simple fact.*

*ii)* *"Since these funds were not honored by the Federal Reserve Bank of Atlanta, the funds were debited from the account ending in 2230." This statement evidences the theft of funds from the Plaintiffs bank account. At the time of deposit the Plaintiff did not receive a provisional credit. Since the payor banks had made final payment on the checks, the funds were posted to the Plaintiffs account by the Defendant(s). If the payor banks had in fact reversed the final payment, contrary to 12 CFR §210.9, then the Defendant(s) correct action would be to charge-back the Plaintiffs account.*

*Charge-back is a reversal of an accounting entry. By debiting the Plaintiff's account the Defendant(s) are still able to keep the proceeds from the deposited checks. Under the Monetary Control Act of 1980, and as reflected in Federal Reserve Regulation D, depository institutions that are members of the Federal Reserve System must maintain their required reserves (in excess of vault cash) directly with a Federal Reserve Bank. Every deposit that FIFTH THIRD BANK receives becomes part of the banks' reserves. Under the current fractional reserve banking laws as codified in 12 CFR § 204.4, commercial banks only need to keep 10% of their deposits on reserve. This means that for every $1 dollar deposit, a commercial bank can create $10 in checkable liabilities. From the newly created $10 in checkable liabilities, $1 goes to the depositor and $9 goes to the bank.*

**14.** *Therefore due to the $230,000.00 that was deposited by the Plaintiff, the defendant(s) were able to create $2,300,000.00 in checkable liabilities.*

**15.** *On May 6, 2013 the Defendant(s) sent a letter stating that they were closing the account #7460471248 (see page 43 from exhibit #1). "At this time we ask that all account activity be terminated, which will assist Fifth Third Bank in closing the account and refunding the remaining the account balance to you as soon as possible."*

*The attached **(exhibit #19)** states that the remaining balance of $19,776.17 USD for the account #7460471248 will not be refunded by the Defendant(s).*

**16.** *Loucks v. Albuquerque National Bank, 76 N.M. 735, 3 U.D.C.Rep. 709, 418 P.2d 191 (1966), holds that punitive damages are allowable when the conduct of the bank is "maliciously intentional, fraudulent, oppressive, or committed recklessly, or with a wanton disregard of the depositor's rights."*

**17.** *Egregious actions committed by the defendant(s) as stated in the attached exhibit 1:*

*i)* *From April 25, 2013 to May 13, 2013 the Plaintiff sent 25 checks totaling $230,000.00 in the form of Image Cash Letters to the back offices of Fifth Third Bank for processing.*

5

113   *ii)     All 25 checks were posted to the Plaintiffs' account #7460552230 by the defendant(s). Since*
114   *the checks were paid by the payor banks the defendant(s) made the funds available for withdrawal.*
115   *(see pages 22, 33, 39 from exhibit #1 and **exhibits #3 and #4**).*

116   *iii)    Within 1 to 2 days after making the funds available the defendant(s) unlawfully debited the*
117   *Plaintiffs' account in the amount of each deposited item. As stated in exhibit 1 the defendant(s)*
118   *claim that the payor banks returned the deposited checks is scandalous, vexatious and erroneous:*

119   *a)      "If the usual procedure in a bank involves recording payment as the last step, no problem*
120   *would arise, since the process of posting would not be complete until an entry was made; if a*
121   *decision not to pay was made, there would be no entry, and the item could be returned". **(see***
122   ***exhibit #5;** Boston College Law Review; Volume 9; Issue 4 Number 4 Article 5; 7-1-1968).*

123   *b)      The entire image cash letter presentment and settlement is completely automated.*
124   *According to ECCHO the Federal Reserve Bank process 63.05 million images every day. Since the*
125   *entire payment process is automated it is impossible for an item to be paid one day and then*
126   *returned the following day without human intervention. Under UCC 4-213(2), final payment of a*
127   *check "firms up" all of the provisional settlements made in the collection process. Blake v. Woodford*
128   *Bank & Trust Co., 555 SW 2d 589 - Ky: Court of Appeals 1977, and Modern Commercial Paper: The*
129   *New Law Of Negotiable Instruments: American Casebook Series, 1994, page 330.*

130   *c)      The defendant(s) failed to provide a return image cash letter. The evidence that the*
131   *defendant(s) did provide could never have been made from a qualified image return cash letter.*
132   *The Reserve Bank warrants that the Electronic Information, if properly printed by the Depository*
133   *Institution, is sufficient to create a substitute check that meets all of the requirements of the Check*
134   *21 Act and its implementing regulation, subpart D of Regulation CC. Page 51 from exhibit #1 and*
135   ***exhibit #13** are examples of substitute checks printed from a valid return image cash letter. The 17*
136   *substitute check items provided by the defendant(s) are bogus. (see pages 26, 27, 52 to 61, 69 and*
137   *70 from exhibit #1 **exhibit #7 and exhibit #8**).*

138   *d)      Lines 140 – 209 from Exhibit #1 is incorporated by reference as though fully stated herein.*

139   *e)      The Defendant(s) have failed to provide a "notice of non-payment", Title 12 CFR § 229.33.*

140   ***18.***     *Since the issuance of exhibit #1 the defendant(s) have committed additional felonies against*
141   *the Plaintiff. On May 04, 2013 the $86,500.00 that the Plaintiff had deposited on May 02, was*
142   *posted by the defendant(s) (see page 33 from exhibit #1). On May 06, 2013 the Plaintiff wired*
143   *$19,250 into the Plaintiffs' checking account at the Bank of Montreal.*

144           *On May 08, 2013 the defendant(s) contacted the Bank of Montreal's wire department and*
145   *stated that the wire was not authorized by the Plaintiff and that the Plaintiff was requesting the*
146   *return of the funds. On May 09, 2013 the Bank of Montreal contacted the Plaintiff to discuss the*
147   *defendant(s) claim regarding the wired funds. Once the Bank of Montreal discovered that the wire*

6

148 | *was in fact authorized by the Plaintiff the defendant(s) were notified that the funds were not going*
149 | *to be returned.*

150 |     *The defendant(s) then contacted the Bank of Montreal's fraud division and stated that the*
151 | *$19,250 that the Plaintiff wired had originated from unlawful activity. Due to the egregious actions*
152 | *of the defendant(s) the Bank of Montreal has closed the Plaintiffs' checking account and has frozen*
153 | *the remaining funds in the account (exhibit #18).*

154 | **19.**    *The criminal conduct of the defendant(s) has left the Plaintiff in a state of peonage and has*
155 | *caused the Plaintiff "significant hardship" and "economic harm" whereby the Plaintiff has been*
156 | *unable to provide the necessities to sustain life (i.e. pay for food and housing).*

157 | **FIRST CAUSE OF ACTION ("Ex Contracto")**

158 | **THEFT BY DECEPTION; (Fraudulent Concealment and Fraudulent Conveyance):**

159 | **20.**    *Plaintiff incorporates by reference as though fully set forth herein, all of the allegations*
160 | *contained in Paragraphs 1 through 19 above.*

161 | **21.**    *At all relevant times herein, said Defendant(s) were acting as individuals and in their*
162 | *official capacity as representatives of FIFTH THIRD BANK.*

163 | **22.**    *Lines 269 – 374 from Exhibit #1 is incorporated by reference as though fully stated herein.*
164 | *The Defendant(s) admit, acknowledge and are in full agreement to the statements made in the*
165 | *"SPECIAL ENTRY UPON DISCOVERY VIA TACIT PROCURATION" regarding the Defendant(s)*
166 | *accountability for conduct/behavior as a representative of FIFTH THIRD BANK.*

167 | **22.**    *On and after April 25, 2013 the Defendant(s), acting alone and acting in concert with each*
168 | *other, and acting without just cause, did consciously, knowingly, intentionally and wrongfully*
169 | *cause certain acts and omissions to proceed in such manner as to hinder, delay, and ultimately*
170 | *prevent the distribution of moneys held for the benefit of the Plaintiff.*

171 | **23.**    *The Defendant(s), acted in their individual and their official capacities with deliberate or*
172 | *reckless disregard for the Constitutional and other rights of the Plaintiff, or with malicious intent*
173 | *and with the knowledge that their acts and omissions violated and denied the Constitutional and*
174 | *other rights of the Plaintiff, or that their acts would cause said Plaintiff other injuries.*

175 | **24.**    *The Defendant(s), did unlawfully and wrongfully cause certain acts and omissions to*
176 | *proceed in such manner as to hinder, delay, and ultimately prevent the distribution of moneys held*
177 | *for the benefit of the Plaintiff, even though the Defendant(s) knew that the Plaintiff had a vested*
178 | *interest and Constitutional right to receive said moneys in a timely, unfettered and unconstrained*
179 | *manner.*

180 | **25.**    *The Defendant(s), knew that the Plaintiff had a vested interest and Constitutional right to*
181 | *receive said moneys in a timely, unfettered and unconstrained manner when they committed the*
182 | *acts and omissions set forth above, causing the Plaintiff to be deprived of property without just*
183 | *compensation and without due process of law.*

7

**26.**   *The Defendant(s) did unlawfully and wrongfully debit $214,000.00 USD from the Plaintiffs' business checking account #7460552230.*

**SECOND CAUSE OF ACTION ("Ex Contracto")**

**BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

**27.**   *Plaintiff incorporates by reference as though fully set forth herein, all of the allegations contained in Paragraphs 1 through 26 above.*

**28.**   *In HAE WON LEE vs. BANK OF AMERICA, 218 Cal.App.3d 914 (1990); Judge J. (Fred) WOODS stated:*

"*Until very recently, the law in California held a bank depositor may maintain a cause of action against her bank for breach of the covenant of good faith and fair dealing. The case which most clearly sets forth the rule is Commercial Cotton Co. v. United California Bank (1985) 163 Cal. App.3d 511 [209 Cal. Rptr. 551, 55 A.L.R.4th 1017].*

*There, the Fourth Appellate District, Division One held a depositor in a noninterest-bearing checking account may sue its bank for breach of the covenant of good faith and fair dealing following the bank's refusal to reimburse the depositor when the bank improperly honored a forged check drawn on the depositor's account. (Id. at p. 516.)*

*In holding the depositor could maintain this cause of action against the bank, the court analogized the depositor/bank relationship to that of the insured/insurer relationship. "[B]anking and insurance have much in common, both being highly regulated industries performing vital public services substantially affecting the public welfare. A depositor in a noninterest-bearing checking account, except for state or federal regulatory oversight, is totally dependent on the banking institution to which it entrusts deposited funds and depends on the bank's honesty and expertise to protect them. While banks do provide services for the depositor by way of monitoring deposits and withdrawals, they do so for the very commercial purpose of making money by using the deposited funds. The depositor allows the bank to use those funds in exchange for the convenience of not having to conduct transactions in cash and the concomitant security in having the bank safeguard them.*

*The relationship of bank to depositor is at least quasi-fiduciary, and depositors reasonably expect a bank not to claim nonexistent legal defenses to avoid reimbursement when the bank negligently disburses the entrusted funds." (163 Cal. App.3d at p. 516.)*

*Other courts, although not always expressly discussing this issue, appear to agree a bank customer, under the proper facts, may proceed against her bank for breach of the covenant of good faith and fair dealing. (See Sanchez-Corea v. Bank of America (1985) 38 Cal.3d 892, 897, 910 [215 Cal. Rptr. 679, 701 P.2d 826] [judgment against bank based upon, inter alia, breach of the covenant of good faith and fair dealing reinstated on appeal]; Kruse v. Bank of America (1988) 202 Cal. App.3d 38, 57-58 [248 Cal. Rptr. 217] [1st. Dist., Div. 1]; Chicago Title Ins. Co. v. Superior*

8

220  *Court (1985) 174 Cal. App.3d 1142, 1156-1158 [220 Cal. Rptr. 507] [1st. Dist., Div. 2]; E.F. Hutton &*
221  *Co. v. City National Bank (1983) 149 Cal. App.3d 60, 72-74 [196 Cal. Rptr. 614] [2d. Dist., Div. 1];*
222  *Sawyer v. Bank of America (1978) 83 Cal. App.3d 135, 139 [145 Cal. Rptr. 623] [1st Dist., Div. 4];*
223  *AARTS Productions, Inc. v. Crocker National Bank (1986) 179 Cal. App.3d 1061, 1069 [225 Cal.*
224  *Rptr. 203] [6th Dist.].)*

225      *Additionally, my review of out-of-state decisions indicates the overwhelming majority*
226  *either expressly or implicitly recognize a bank customer may proceed against its bank on this*
227  *theory. (See, e.g., Alaska Statebank v. Fairco (Alaska 1983) 674 P.2d 288, 291; Touche Ross Ltd. v.*
228  *Filipek (Hawaii Ct. App. 1989) 778 P.2d 721, 730; In re Cedar Const. Co. (Bankr.W.D.Mich. 1986)*
229  *63 B.R. 228, 238 [bankruptcy court applying Michigan law]; Noonan v. First Bank Butte (1987)*
230  *227 Mont. 329 [740 P.2d 631, 634]; Bonady Apartments v. Columbia Banking (1983) 119 Misc.2d*
231  *923 [465 N.Y.S.2d 150, 154], modified 99 A.D.2d 645 [472 N.Y.S.2d 221]; Happy Cattle Feeders v.*
232  *First Nat. Bank (Tex. Ct. App. 1981) 618 S.W.2d 424, 427; Garner v. Hichman (Wyo. 1985) 709 P.2d*
233  *407, 411; but see Keeton v. Bank of Red Bay (Ala. 1985) 466 So.2d 937, 940, fn. 1 [no bad faith*
234  *action against banks]; accord Betterton v. First Interstate Bank of Arizona (8th Cir.1986) 800 F.2d*
235  *732, 736 [interpreting Arizona law]; Washburn v. Union Nat. Bank and Trust Co. (1986) 151 Ill.*
236  *App. 3d 211 [502 N.E.2d 739, 743]; see generally, Annot., Bank's Liability for Breach of Implied*
237  *Contract of Good Faith and Fair Dealing (1987) 55 A.L.R.4th 1026 and cases cited therein.)"*

238      *The Wallis court held the following characteristics must be present in a noninsurance*
239  *contract to be tortuously breached: "(1) the contract must be such that the parties are in inherently*
240  *unequal bargaining positions; (2) the motivation for entering the contract must be a nonprofit*
241  *motivation, i.e., to secure peace of mind, security, future protection; (3) ordinary contract damages*
242  *are not adequate, because (a) they do not require the party in the superior position to account for*
243  *its actions, and (b) they do not make the inferior party `whole'; (4) one party is especially*
244  *vulnerable because of the type of harm it may suffer and of necessity places trust in the other party*
245  *to perform; and (5) the other party is aware of this vulnerability." (160 Cal. App.3d at p. 1118;*
246  *accord Rogoff v. Grabowski (1988) 200 Cal. App.3d 624, 631 [246 Cal. Rptr. 185] [per Lillie, P.J.].)*

247      *The relationship between the Plaintiff and Defendant(s) meets all of the prongs of the Wallis*
248  *test. First, the relationship between the Plaintiff and the Defendant(s) are inherently unequal. The*
249  *Plaintiff is hardly in a position to negotiate the terms and conditions of his checking account or how*
250  *the Defendant(s) will handle certain transactions.*

251      *Second, the motivation for the Plaintiff applying for a checking account is nonprofit. As the*
252  *court in Commercial Cotton Co. explained, "[t]he depositor allows the bank to use those funds in*
253  *exchange for the convenience of not having to conduct transactions in cash and the concomitant*
254  *security in having the bank safeguard them." (163 Cal. App.3d at p. 516.)*

9

255    *Third, ordinary damages are inadequate to deter the Defendant(s) from wrongful conduct*
256    *or to make the Plaintiff whole. Contract damages alone would only require the Defendant(s) to*
257    *repay the money erroneously paid out. The Defendant(s) would not be required to compensate the*
258    *Plaintiff for any emotional distress suffered as a consequence of the Defendant(s) allegedly*
259    *tortuous conduct. (See Wallis v. Superior Court, supra, 160 Cal. App.3d at p. 1119.)*

260    *Fourth, the Plaintiff is in an extremely vulnerable position since he cannot monitor the*
261    *Defendant(s) conduct or readily compel the necessary corrective action once the Defendant(s) have*
262    *acted tortuously. If, as the bank did in Commercial Cotton Co., the bank refuses to debit the funds*
263    *erroneously paid out, the Plaintiff is then effectively barred from using his own money until the*
264    *Defendant(s) agree to remedy the wrong. (Commercial Cotton v. United California Bank, supra,*
265    *163 Cal. App.3d at p. 516 ["A depositor in a noninterest-bearing checking account ... is totally*
266    *dependent on the banking institution to which it entrusts deposited funds and depends on the*
267    *bank's honesty and expertise to protect them"].)*

268    *Finally, it may fairly be assumed the Defendant(s) are aware of the precarious position in*
269    *which it places the Plaintiff when it wrongfully dishonors a check or prevents the Plaintiff from*
270    *using his deposited funds.*

271    *When the Defendant(s) breach its duty of good faith to the Plaintiff it places the Plaintiff in*
272    *the same financial dilemma as in the insurance context. The Plaintiff who is improperly denied the*
273    *use of his own money is essentially denied the right of support. The Plaintiff cannot turn to the*
274    *marketplace for that money but instead must wait until the Defendant(s) either chooses to honor its*
275    *good faith duty or is compelled to do so by the trial courts. This is no different from the insured who*
276    *is denied the right to his insurance proceeds and must either await payment from the insurer or sue*
277    *in the courts.*

278    *Further, the Defendant(s), just as an insurer, is selling protection when it agrees to act as a*
279    *depository for the Plaintiffs' money and to pay that money upon demand. The Plaintiff seeks out*
280    *the Defendant(s) specifically to enjoy that protection and convenience which would otherwise be*
281    *unobtainable. It would ignore the realities of our society to believe people have a reasonable choice*
282    *concerning the security of their money other than relying upon a bank or other similar financial*
283    *institution.*

284    *Finally, the Plaintiff and the Defendant(s) are financially at odds to the same degree an*
285    *insurer and its insured are. In the bank relationship, a bank's interests become financially at odds*
286    *whenever it suffers a loss which is not attributable to the customer. For example, if a bank*
287    *improperly negotiates a check drawn upon a customer's account, thereby paying funds to a third*
288    *party, a loss occurs. The bank's interest is to shift that loss to the customer rather than reduce its*
289    *own capital reserves to cover the loss.*

290

10

291    *The same type of tension is created in the insurance relationship. As the court explained,*
292    *"[i]f the insurer pays a claim, it diminishes its fiscal resources. The insured, of course, has paid for*
293    *protection and expects to have its losses recompensed." (47 Cal.3d at p. 693.) If anything, the*
294    *insurance relationship is less confrontational because the loss is a risk calculated and planned for*
295    *by the insurer.*

296    *In sum, based upon the Supreme Court's analysis of the special relationship test, the*
297    *Defendant(s) and the Plaintiff possess the requisite special relationship which warrants permitting*
298    *the Plaintiff to proceed on a tort theory of breach of the covenant of good faith and fair dealing.*

299    *To deny the existence of this relationship is to deny the realities involved. As we move closer*
300    *and closer to a cashless society we become more and more reliant upon the services provided by*
301    *banks and other financial institutions. If a bank so chooses, it may deny its customer access to her*
302    *money for an indefinite period and the bank customer will have no recourse short of litigation.*
303    *Until that litigation is resolved, the customer may be unable to purchase even the most basic*
304    *necessities.*

305    *Accordingly, the Plaintiff has a cause of action against the Defendant(s) for breach of the*
306    *covenant of good faith and fair dealing.*

307    **29.**    *The Defendant(s) breach of the covenant of good faith and fair dealing has affected the*
308    *Plaintiffs' business dealings in interstate commerce and since the Plaintiff was injured in his*
309    *business, the Plaintiff shall recover threefold the compensatory damages stated in the first cause of*
310    *action = **3 x $214,000.00 USD = $642,000.00 USD** (see Title 18 USC §1964).*

311    **30.**    *Due to the Defendant(s) criminal actions and interference in interstate commerce, the*
312    *Plaintiff has been unable to process 32 invoices valued at $9500 each. Plaintiff's total loss of*
313    *revenue as of May 29, 2013 = **$304,000.00 USD.***

314    **THIRD CAUSE OF ACTION ("Ex Delicto")**

315    **FRAUD IN THE INDUCEMENT AND FRAUD IN FACT BY DECEIT**

316    **31.**    *Plaintiff incorporates by reference as though fully set forth herein, all of the allegations*
317    *contained in Paragraphs 1 through 30 above.*

318    **32.**    *The Defendant(s), on two separate occasions, acting without just cause, did consciously,*
319    *knowingly, intentionally and wrongfully provide false information to the Bank of Montreal with*
320    *the intent that it would cause further injury to the Plaintiff. Lines 140 -153 from this document is*
321    *incorporated by reference as though fully stated herein.*

322    **FOURTH CAUSE OF ACTION ("Ex Delicto")**

323    **WRONGFUL DISHONOR ANALOGOUS TO COMMON-LAW SLANDER**

324    **("Trader Rule") AND MALICE**

325    **33.**    *Plaintiff incorporates by reference as though fully set forth herein, all of the allegations*
326    *contained in Paragraphs 1 through 32 above.*

11

**34.** *The courts viewed a wrongful dishonor as analogous to slander of a person in his trade, which called for different substantive rules. At common law, when a defendant slandered a person in his trade or profession the plaintiff could recover damages without proof of any actual loss, pecuniary or otherwise (PROSSER, supra note 21, at 791, 793-95). Prosser indicates that while this exception to the general rule requiring proof of pecuniary losses in slander cases has an obscure origin, courts probably dispensed with the requirement because they recognized the likelihood of pecuniary loss in these cases. Thus, when the customer was a trader he could recover substantial damages for wrongful dishonor without proof of special damages. Rolin v. Steward, 139 Eng. Rep. 245, 250 (1854).*

*All the customer must establish is his status as a trader and the existence of the wrongful dishonor. This rule became known as the "Trader Rule." Nearly all courts in this country adopted this rule. An important impetus behind the acceptance of the Trader Rule was the courts' recognition of the vital importance of a customer's credit standing within the community, the ease with which a wrongful dishonor can damage a person's credit standing, and the difficulty in many cases of proving special damages.*

*The courts found these problems particularly acute when the customer was engaged in a trade or business; hence the courts were receptive to the Trader Rule. Eventually the courts extended the Trader Rule to encompass any "businessman." See, e-g., Peabody v. Citizens' State Bank, 98 Minn. 302, 108 N.W. 272 (1906).*

*Modem financial practices, which made non-merchants as heavily dependent upon the availability of credit as merchants, prompted some courts to extend the availability of the Trader Rule presumption to all customers. See Valley Nat'l Bank v. Witter, 58 Ariz. 491, 500-02, 121 P.2d 414, 418-19 (1942); Atlanta Nat'l Bank v. Davis, 96 Ga. 334, 336-37, 23 S.E. 190, 190-91 (1895); Granada Bank v. Lester, 126 Miss. 442, 444, 89 So. 2, 3 (1921); Woody v. Nat'l Bank, 194 N.C. 549, 554, 140 S.E. 150, 153 (1927); Lorick v. Palmetto Bank & Trust Co., 74 S.C. 185, 187, 54 S.E. 206, 206 (1906).*

*The Trader Rule also rested on the related view that banks are quasipublic institutions. Patterson v. Marine Nat'l Bank, 130 Pa. 419, 18 A. 632 (1889). Notwithstanding that the checking account relationship is initially a private contractual one, the vital role banks play in the business of a community justified the imposition of this tort-like remedy as a matter of public policy. This approach makes available the presumption of damages to trader and nontrader alike.*

*In summary, attaching a tort label to an action for wrongful dishonor developed a link to the law of defamation, and in particular the law of slander. One product of this association was the Trader Rule. It should be noted that both the contract and the tort theory of liability for wrongful dishonor could accommodate the Trader Rule, although the courts had to couch it in the appropriate doctrinal terminology. See Wiley v. Bunker Hill Nat'l Bank, 183 Mass. 495, 496, 67*

12

363 *N.E. 655, 656 (1903) (Trader Rule available in a contract action for wrongful dishonor); supra*
364 *notes 28-35 and accompanying text.*

365 **35.** *In accordance with this view is language in Bank of Louisville Royal v. Sims. While the*
366 *Court of Appeals of Kentucky did not have to consider the question whether punitive damages could*
367 *be recovered under section 4-402, it expressed the opinion that [h]ad the action of the bank been*
368 *willful or malicious, justifying a punitive award, damages of this kind [punitive] might have been*
369 *recoverable as naturally flowing from this type of tortuous misconduct.*

370 *Again it was implied that if the common law prerequisites had been met, recovery of*
371 *punitive damages might have been allowed notwithstanding the provisions of section 4402.29 It*
372 *then appears that even though punitive damages are not expressly recoverable under the UCC,*
373 *they may be obtained based on a common law action either in tort or contract. Under modern*
374 *pleading it is not necessary to specify a particular tort or contract theory for a cause of action;*
375 *however, the measure of damages recoverable in contract or tort constitutes an important*
376 *consideration in electing a cause of action when punitive damages are sought.*

377 *Other cases have held that a customer may recover punitive damages for a bank's breach of*
378 *contract in wrongfully dishonoring a check if the breach is malicious or fraudulent. See Thomas v.*
379 *American Trust Co., 208 N.C. 653, 182 S.E. 136 (1935); Bank of New Mexico v. Rice, 78 N.M. 170,*
380 *429 P.2d 368 (1967); cf. Wheeler v.Bank of Edenton, 209 N.C. 258, 183 S.E. 269 (1936).*

381 *Originally there was no distinction between tort and contract. However, with the advent of*
382 *causes of action a distinction arose. Nevertheless, the gap between tort and contract was never so*
383 *wide that it could not be bridged, as was recognized as early as 1844:*

384 *[W]here there is a contract, there may be an action of tort founded on the neglect to perform*
385 *that duty, as such neglect amounts to deceit. The contract creates a duty, and the neglect to*
386 *perform that duty is a misfeasance and a tort. See Brown v. Boorman, 11 Cl. & F. 1, 8 Eng. Rep.*
387 *1003, 1012 (1844).*

388 *This reasoning can be applied to the bank-depositor relationship; and the view, that there*
389 *is an implied contract between the bank and its customer and out of this contract arises a duty to*
390 *pay the customer's checks, has been adopted in this country. See First Nat'l Bank v. Stewart, 204*
391 *Ala. 199, 85 So. 529 (1920) (liability arises out of the bank's implied contract, and out of the*
392 *contract a duty to pay its depositor's checks on demand); First Nat'l Bank v. Shoemaker, 117 Pa. St.*
393 *94, 11 A. 304 (1887).*

394 *A duty to pay has also been imposed on the bank based on the debtor-creditor aspects of the*
395 *bank-customer relationship. The imposition on the bank of a duty to pay a check is perhaps best*
396 *grounded on policy reasons. In Valley National Bank v. Witter, the Supreme Court of Arizona*
397 *noted that the bank-depositor relationship was essentially one of debtor-creditor and therefore*
398 *contractual in nature.*

13

399    *Nonetheless, the court stated that a tort action could be brought for wrongful dishonor*
400    *because a wrongful dishonor amounted to "imputation of wrong-doing against the depositor and*
401    *an attack upon his character". The concept of an implied duty arising out of the bank depositor*
402    *relationship has gained acceptance until it is now supported by the weight of authority. See*
403    *Weaver v. Bank of America Nat'l Trust & Say. Ass'n, 59 Cal. 2d 428, 380 P.2d 644, 30 Cal. Rptr. 4*
404    *(1963); Waggoner v. Bank of Bernie, 220 Mo. App. 165, 281 S.W. 130 (1926).*

405    *Aside from a violation of some general duty, some courts have seen fit to find specific torts*
406    *in certain cases of wrongful dishonor. In Marcum v. Security Trust & Savings Co., 221 Ala. 419,*
407    *129 So. 74 (1930); the court held that defamation was an acceptable cause of action in cases of*
408    *wrongful dishonor. It was reasoned that the dishonor by the bank could be construed as a claim*
409    *that the depositor acted dishonestly and in bad faith. Wrongful dishonor also gave rise to a cause of*
410    *action in slander in Schaffner v. Ehrman, 139 Ill1.0 9,28 N.E. 917 (1891).*

411    *In this case the Illinois court noted that slander required malice, and that the requirement*
412    *would be satisfied if the plaintiff could show that the bank wrongfully refused to pay the check and*
413    *the dishonor was intentional. In this situation, the court did not require intent on the part of the*
414    *bank to injure the drawer. Similarly, libel has been held to be an appropriate cause of action when*
415    *a bank wrongfully dishonored an attorney's check. See Nealis v. Industrial Bank of Commerce, 200*
416    *Misc. 406, 107 N.Y.S.2d 264 (Sup. Ct. 1951).*

417    *As a part of his tort cause of action, a customer is required to establish malice before he can*
418    *recover punitive damages. This requirement is almost universally recognized, by both the writers*
419    *and the courts. see "E.g., C. MCCORMICK, DAMAGES § 81 (1935); C. MORRIS, TORTS 48 (1953);*
420    *see, e.g., F. BOHLEN, STUDIES IN THE LAW OF TORTS 2-7 (1926); 2 F. HARPER & F. JAMES,*
421    *LAW OF TORTS § 25.1 (1956); and Eshelman v. Rawalt, 298 I11. 192, 131 N.E. 675, 677 (1921).*

422    *This rule has been extended to cases involving wrongful dishonor. Although the requirement*
423    *of malice is uniform, the interpretation of what constitutes malice varies with the jurisdiction.*
424    *Various courts have interpreted malice to include: a fraudulent act, wanton in character and*
425    *maliciously intentional; "actual malice, oppression, or bad motive"; "fraud, malice, oppression, or*
426    *other special motives of aggravation"; and reckless or wanton actions. See Bank of New Mexico v.*
427    *Rice, 78 N.M. 170,429 P.2d 368 (1967); American Nat'l Bank v. Morey, 113 Ky. 857, 69 S.W. 759,*
428    *760 (1902); Wood v. American Nat'l Bank, 100 Va. 306,40 S.E. 931, 934 (1902); First Nat'l Bank v.*
429    *Stewart, 204 Ala. 199, 85 So. 529 (1920).*

430    **36.**    *Since the Defendant(s) actions were fraudulent, wanton in character and maliciously*
431    *intentional the Plaintiff can recover punitive damages. Punitive damages shall be awarded not as*
432    *compensation to the Plaintiff but solely to punish, penalize, and deter the Defendant(s).*

433    **37.**    *Since the Defendant(s) have committed and are committing SCIENTER ACTS (omitting*
434    *knowledge) in Bad Faith, Fraud Conspiracy, Undue Enrichment, Theft, Willful and Wanton,*

14

435 *Irreparable Harm, with Malice and Forethought, Slander, Money-laundering Illegal use of electric*
436 *media, and Commercial War, the following punitive damages shall be awarded to the UNITED*
437 *STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA, ATLANTA*
438 *DIVISION; THE DEPARTMENT OF JUSTICE AND ANY OTHER AGENCIES SERVED BY THE*
439 *NATIONAL FINANCE CENTER (Federal Payroll Agency) AND ANY OTHER AGENCIES in need of*
440 *funds to maintain their current workforce:*

441 *Violations under Title 18 of the U.S. Code committed by the Defendant(s) for each deposited item.*

442 *i)        18 USC § 656 - Theft, embezzlement, or misapplication by bank officer or employee =*
443 *$1,000,000 x 25 deposits;*

444 *ii)       18 USC § 1005 - Bank entries, reports and transactions = $1,000,000 x 25 deposits;*

445 *iii)      18 USC § 1341 - Frauds and swindles = $1,000,000 x 25 deposits;*

446 *iv)      18 USC § 1344 - Bank fraud = $1,000,000 x 25 deposits;*

447 *v)       18 USC § 1346 – Definition of "scheme or artiface to defraud" = $500,000 x 10 letters,*

448 *Therefore the total punitive damages = **$105,000,000.00 USD***

449 **38.** *Determination for additional punitive damages if the court deems proper. The attached call*
450 *reports **(exhibit #14)** show that from March 31, 2012 to March 31, 2013 the Defendant(s) received*
451 *$5,444,847,000.00 USD in deposits. Therefore, under the fractional reserve laws, the Defendant(s)*
452 *were able to create $49,003,623,000.00 USD worth of checkable liabilities for the benefit of the*
453 *Defendant(s). The attached **(exhibit #21)** shows that the Defendant(s) have been committing*
454 *fraud in regards to the total deposits that Fifth Third Bank has received.*

455 **WHEREFORE,** *Plaintiff seeks judgment as follows:*

456 **38.** *For an immediate order for relief in the amount of **$946,000.00 USD** representing the*
457 *compensatory damages prayed for in the First and Second Cause of Action set forth above. The*
458 *actions of the Defendant(s) have caused the Plaintiff severe economic hardship and are preventing*
459 *the Plaintiff from being able to provide the necessities to sustain life. i.e. Food and Housing;*

460 **39.** *For a judgment for punitive damages in an amount sufficient to punish and to make*
461 *examples of these Defendant(s), and to deter these Defendant(s) and others from engaging in*
462 *similar conduct;*

463 **40.** *Compensatory and Punitive damages must be paid out from the Defendant(s) reserve*
464 *account held at the Federal Reserve Bank of Cleveland.;*

465 *For an award of fees, expenses and costs of suit incurred herein ($440); and:*

466 **41.** *For such other and further relief as this Court deems just and proper*

467 **42.** *All funds that the Plaintiff receives will be cancelled out by the Plaintiff at the end of the*
468 *calendar tax year. By filling out the necessary Treasury tax forms the funds that the Plaintiff*
469 *receives will be removed from the public debt.*

15

470 **_Criminal Certification:_** I, James Williams, affiant/owner/beneficiary for the Plaintiff JAMES A
471 WILLIAMS TRUST, do hereby certify and affirm that I have grounds to and do believe, that the
472 above accused Defendant(s) committed the above offense(s) contrary to the laws of the U.S. Code.

473
474
475 James Williams, affiant, real party of interest and
476 Owner/Beneficiary for the
477 JAMES A WILLIAMS TRUST Account #7460552230 and
478 Account #7460571248
479 June 04, 2013
480

481 **_General Final Certification:_** I, James Williams, affiant/owner/beneficiary for PLAINTIFF
482 JAMES A WILLIAMS TRUST, do hereby certify and affirm on my full commercial liability, that I
483 have read the foregoing and know the content thereof, and that, to the best of my knowledge,
484 understanding, and belief, it is true, correct, complete, not misleading, and is the truth, the whole
485 truth, and nothing but the truth under the pains and penalties of perjury under the laws of the
486 United States of America and International Law.

487 City of Toronto                          )
488                                          ) Commercial Oath
489 Province known as Ontario                )
490                                          James Williams, affiant, real party of interest and
491 43°39'37'.78" N                          Owner/Beneficiary for the
492 79°23'04'.01" W                          JAMES A WILLIAMS TRUST Account #7460552230 and
493                                          Account #7460571248
494

495 June 04, 2013

496                                          *Seal/*

497

498 **Notary**

499     On this date, the 4th of June, 2013, a man appearing in his true character, who identified
500 himself as James Williams, appeared before me ___David____Lefkowitz_____ a
501 Notary Public residing in the City of Toronto, in the Province of Ontario, and attested to the truth
502 to the information provided in the "MEMORANDUM IN SUPPORT OF AN IMMEDIATE ORDER
503 FOR RELIEF" and the enclosed exhibits.   **Red Seal Notary Inc.**
504                                          777 Bay Street, Unit M207-B
505 s/_____       Toronto, Ontario M5G 2C8
506 Notary                                   (416) 640-2648
507                                          David Lefkowitz
508                                          Barrister & Solicitor
                                             Notary Public and Commissioner of Oaths
509                                          in and for the Province of Ontario.
                                             My commission is of unlimited duration
                                             No legal advice given
                                             16        Sworn/Declared before me at
                                             _____, Ontario _____
                                             this ___ day of _____, 20___

*Exhibit #2*



# FIFTH THIRD BANK

**Bank Protection, Mail Drop # MCSB1A**
**105 Live Oaks Gardens**
**Casselberry, FL 32707**

5/22/13

James A. Williams Trust
Peter Papoulias, Trustee
4175 Breckenridge Court
Alpharetta, GA 30005

RE:    account ******2230

Dear Peter Papoulias:

Please be advised that Fifth Third Bank is denying your claim and will not reimburse
any funds for any items deposited into a Fifth Third Bank account that were returned.
These items were returned by the bank they were drawn on, Federal Reserve Bank
of Atlanta, for the following reasons: Invalid Routing number and Fraudulent Item.
Since these items were not honored by the Federal Reserve Bank of Atlanta, the
funds were debited from the account ending in 2230.

If you have any questions, please call me at (407) 712-8219.

Sincerely,

Adam Hipple
Corporate Investigations
Fifth Third Bank, Southern Region
(407) 712-8219

*17*

Contact Us   Service Center   Help   Privacy & Security /  FAQs

*Exhibit #3*



## Account Activity

**Welcome, JAMES A WILLIAMS TRUST**
Wednesday, May 1, 2013

**Account Activity**  |  Account Summary  |  Account Statements & Documents

Export History

**Account:**  BUSINESS ADVANTAGE CHECKING / (X2230)

**Statement Period:**  1 Statement Prior   [Go]

**Posted Transactions**    (BUSINESS ADVANTAGE CHECKING X2230)

Advanced Search:     Check Number          Keyword          [Go]

| Date | Debit(-) | Credit(+) | Check | Description | Balance | Action |
|---|---|---|---|---|---|---|
| 04/30/13 | | | | **** ANNUAL PERCENTAGE YIELD EARNED: 0.00% **** | | |
| 04/30/13 | | | | **** DAILY BALANCE **** | $2,349.17 | |
| 04/30/13 | | $4,500.00 | | DEPOSIT | | |
| 04/30/13 | $4,500.00 | | 7114 | RETURN DEPOSIT ITEM(S) ADVICE:101388 | | |
| 04/29/13 | | | | **** DAILY BALANCE **** | $2,349.17 | |
| 04/29/13 | $14.59 | | | INTERNATIONAL TRANS FEE | | |
| 04/29/13 | $0.98 | | | MASTERCARD CURRENCY CONVERSION FEE | | |
| 04/29/13 | $2,000.00 | | | 5/3 ONLINE TRANSFER TO CK: XXXXXX1248 REF # 00312057114 | | |
| 04/29/13 | $491.19 | | | CIRRUS WITHDRAWAL AT LOC TD1590 420 Bloor St E Toronto | | |
| 04/29/13 | $250.00 | | | 5/3 ONLINE TRANSFER TO CK: XXXXXX1248 REF # 00312114648 | | |
| 04/26/13 | | | | **** DAILY BALANCE **** | $5,105.93 | |
| 04/26/13 | | $4,500.00 | | DEPOSIT | | |
| 04/22/13 | | | | **** DAILY BALANCE **** | $605.93 | |
| 04/22/13 | $14.51 | | | INTERNATIONAL TRANS FEE | | |
| 04/22/13 | $0.98 | | | MASTERCARD CURRENCY CONVERSION FEE | | |
| 04/22/13 | $488.60 | | | CIRRUS WITHDRAWAL AT LOC TD1589 420 Bloor St E Toronto | | |
| 04/18/13 | | | | **** DAILY BALANCE **** | $1,110.02 | |
| 04/18/13 | | $1.01 | | DEPOSIT | | |
| 04/18/13 | $1.01 | | 1001 | ELECTRONIC IMAGE | | |
| 04/15/13 | | | | **** DAILY BALANCE **** | $1,110.02 | |
| 04/15/13 | $54.95 | | | DEBIT CARD PURCHASE AT PRN COAST TO COAST, 818-377-5300, CA ON 041113 FROM CARD#: XXXXXXXXXXXX3896 | | |
| 04/12/13 | | | | **** DAILY BALANCE **** | $1,164.97 | |
| 04/12/13 | $121.99 | | | DEBIT CARD PURCHASE AT D&B*SMALL BUSINESS, 800-932-0025, NJ ON 041113 FROM CARD#: XXXXXXXXXXXX3896 | | |
| 04/10/13 | | | | **** DAILY BALANCE **** | $1,286.96 | |
| 04/10/13 | $57.00 | | | SERVICE CHARGE | | |
| 04/10/13 | $501.29 | | | JEANIE WITHDRAWAL AT LOC 00AA25 . TORONTO ON | | |
| 04/09/13 | | | | **** DAILY BALANCE **** | $1,845.25 | |
| 04/09/13 | $14.59 | | | INTERNATIONAL TRANS FEE | | |
| 04/09/13 | $0.98 | | | MASTERCARD CURRENCY CONVERSION FEE | | |
| 04/09/13 | $491.14 | | | CIRRUS WITHDRAWAL AT LOC TD1589 420 Bloor St E Toronto | | |





# DirectFed - Daily Activity

**Item Status Code:**    **ACKFRB**
**Report Period Start:**   **05/10/13 05:59:00 PM**
**Report Period End:**     **05/10/13 05:59:00 PM**

**Bank Of First Deposit:** 042000314
**Account Number:**     7460552230

**Date:**     05/10/13
**Depositor:** JAMES A WILLIAMS TRUST
**Location:** Drafts
**Terminal:** 10005049

**Batch:**     9

**Batch:**     Check21 - 9

| Routing # | Account Number | Check Number | Status Date | Amount | Sequence |
|---|---|---|---|---|---|
| 041000014 | 0083875550 | 2140 | 05/10/13 05:59:00 PM | 9,750.00 | 27 |
| 041000014 | 0083875550 | 2141 | 05/10/13 05:59:00 PM | 9,750.00 | 28 |
| 041000014 | 0083875550 | 2142 | 05/10/13 05:59:00 PM | 9,750.00 | 29 |
| 061000146 | 0064095150 | 2310 | 05/10/13 05:59:00 PM | 9,750.00 | 30 |
| 061000146 | 0064095150 | 2311 | 05/10/13 05:59:00 PM | 9,750.00 | 31 |
| 061000146 | 0064095150 | 2312 | 05/10/13 05:59:00 PM | 9,750.00 | 32 |
| **Check21** | **9** | # of Items: | 6 | 58,500.00 | |
| **Batch:** | **9** | # of Items: | 6 | 58,500.00 | |
| **Terminal:** | **10005049** | # of Items: | 6 | 58,500.00 | |
| **Location:** | **Drafts** | # of Items: | 6 | 58,500.00 | |
| **Depositor:** | **JAMES A WILLIAMS TRUST** | # of Items: | 6 | 58,500.00 | |
| **Date** | **05/10/13** | # of Items: | 6 | 58,500.00 | |
| **Account** | **7460552230** | # of Items: | 6 | 58,500.00 | |
| **BOFD** | **042000314** | # of Items: | 6 | 58,500.00 | |

# DirectFed - Daily Activity

**Item Status Code:**      **ACKFRB**
**Report Period Start:**   **05/10/13 05:59:00 PM**
**Report Period End:**     **05/10/13 05:59:00 PM**

|                  | # of Items | Amount      |
|------------------|------------|-------------|
| Report Totals:   | 6          | $58,500.00  |

20



## Boston College Law Review

Volume 9
Issue 4 *Number 4*

Article 5

7-1-1968

# Bank Procedures and the U.C.C.—When Is a Check Finally Paid?

William B. Sneirson

Follow this and additional works at: http://lawdigitalcommons.bc.edu/bclr

⚙ Part of the <u>Banking and Finance Commons</u>, and the <u>Commercial Law Commons</u>

Recommended Citation

William B. Sneirson, *Bank Procedures and the U.C.C.—When Is a Check Finally Paid?*, 9 B.C.L. Rev. 957 (1968), http://lawdigitalcommons.bc.edu/bclr/vol9/iss4/5

This Uniform Commercial Code Commentary is brought to you for free and open access by the Law Journals at Digital Commons @ Boston College Law School. It has been accepted for inclusion in Boston College Law Review by an authorized administrator of Digital Commons @ Boston College Law School. For more information, please contact nick.szydlowski@bc.edu.


# EXHIBIT #7

The attached **exhibit #9** describes the steps involved in the printing of a substitute check from an image cash letter. There are two instances in which a substitute check would be created: **1.** After truncation the imaged check is passed along as a computer file until someone (a later bank, the bank's customer, or whoever) refuses to take the imaged version and insists on getting paper. In that case the bank (now named a .reconverting bank.[3]) will print out a paper version of the check; and **2.** If the payor bank returns the image cash letter NSF to the BOFD, the BOFD can create a substitute check so that the customer can re-deposit the item. "Return reason values of NSF and Uncollected Funds (UCF) or Unavailable Funds (UAF) are commonly accepted as eligible for redeposit following the first return. However, other reasons that are also used are: Unavailable Funds and Refer to Maker. This process varies between institutions based on the interpretation of the paying bank's selection of return reason and potential risk to the BOFD bank/depositor. It is expected that if an item is redeposited, that there is a likelihood that the item will be paid".

The defendant(s) claim that the payor banks had returned the deposited checks is scandalous, vexatious and erroneous. The defendant(s) have failed to respond to the Plaintiffs' numerous requests to provide an explanation for the 17 items in exhibit #8. The items provided by the Defendant(s) do not conform with the ANSI X9.100-140 Specifications for an Image Replacement Document (IRD). Furthermore, the items have been doctored and fabricated by the Defendant(s) with the intent to deceive the Plaintiff. "THE TORT OF FRAUDULENT DECEIT... The elements of actionable deceit are: A false representation of a material fact made with knowledge of its falsity, or recklessly, or without reasonable grounds for believing its truth, and with intent to induce reliance thereon, on which plaintiff justifiably relies on his injury...". Source: Steven H. Gifis, 'Law Dictionary', 5th Edition, Happauge: Barron's Educational Series, Inc., 2003

**IRREFUTABLE FACTS THAT SHOW THAT THE DEFENDANT(S) 17 ITEMS ARE FRAUDULENT (see exhibit #8):**

**1.** If the deposited checks were in fact returned unpaid, the Defendant(s) would have received a qualified return image cash letter. If that was the case than the Defendant(s) would have simply forwarded the return image cash letter to the Plaintiff by email and by doing so the Defendant(s) would have eliminated any liability associated with each item. Instead of simply forwarding the return cash letter by email, the Defendant(s) wasted a lot of time and energy in creating a return item that fails to meet the standards of a substitute check and as such cannot be re-deposited. Furthermore, by attempting to create a substitute check the Defendant(s) have become liable for the items.

Issues Related to Printing Return IRDs: If the returned items will be re-presented then <u>they must be derived from an ICL file and printed as a completely conformant negotiable instrument, a Return IRD.</u> Such a fully formed document can then be run though standard check sorters as if it were an original check. The requirements for printing a conformant IRD include:

1. IRD Paper – in one, two or three up configurations

23

2. A MICR line using a MICR font tailored to the print engine as well as the use of magnetic ink/toner. The MICR line must be printed using magnetic toner and properly formed and spaced MICR characters. Lacking these characteristics, a printed IRD will not be read properly in check sorters.

**2.**      The Defendant(s) claim that day(s) after the Payor banks had settled for each of the 25 items with its Administrative Reserve Bank that the Payor Bank reversed their final settlement and then returned each of the 25 items to the Defendant(s) is not only ludicrous but is in fact an impossibility.

The entire image cash letter deposit process from start to finish is completely automated (i.e. no human intervention). The production statistics released by ECCHO in January 2013 states that the Federal Reserve Bank processes 69,050,000 images every day (720 images every second) **(see exhibit   #10).** ECCHO also states that 262,000 images are returned every day **(see exhibit #11)**. The number of images that are paid one day and then returned by the drawee the day after is 0. The number is 0 because it never happens.

The 2010 Federal Reserve Payments study also substantiates this claim **(see exhibit #12).** The overall findings show how many check were written; how many checks were paid; how many "interbank" checks were paid; how many checks were returned unpaid; how many "interbank" check were returned unpaid, and how many checks were deposited.

Nowhere in the payments study does it state how many checks were paid one day and then returned by the drawee the day after. The study does not mention this because it never happens.

**3.**      The Defendant(s) accounting entries in regards to the Plaintiffs' business checking account does not show a charge-back of any deposited items. Instead the Defendant(s) debited the Plaintiffs' account and kept the proceeds from the 25 items in the Defendant(s) reserve account held at the Federal Reserve Bank of Cleveland.

**4.**      The **exhibit #8** provided by the Defendant(s) do not meet any of the requirements of a valid return substitute check. The exhibits:

**a)**      The items found in exhibit #8 are not printed on valid IRD check stock paper and as such the items fail to comply with the ANSI X9. 100-140 technical guidelines in size, layout, paper weight, and document security. **(see exhibit #13).**

**5.**      For additional information regarding the evidence of fraud, please see the attached exhibit #8. The Plaintiff has provided a detailed explanation describing the problems found in each of the 17 items created by the Defendant(s).

**6.**      **Image to Image Redeposits Confusing for the Consumer and Customer Service:**

As the speed of collection, return, and redeposit of image to image returns have increased, financial institutions and their customers viewing transactions via on-line banking and statement applications have increasingly mistaken the represented return item as a duplicate presentment of the original item. **_This is because image to image represented items are not converted to an IRD, and, as a result, the image looks exactly like the original presentment._** Untrained customer service and operations

departments may also have difficulty properly identifying these items as re-presentments. Additionally, many duplicate item detection tools identify these items as duplicates (a false positive) if the systems are not sophisticated enough to utilize return item history in conjunction with properly applied electronic return reason codes.

**CHECK 21 FAQS:**

7.      **Q:** Why do some return items not include a valid Return Reason stamp in the image?

**A:** When an item is received electronically and returned electronically, it may not be physically stamped for a return reason code to be shown in the image. Instead, the Return Reason Code will be inserted into the Type 31 record and also into the Type 35 record. When an electronic return is created from a paper item, the item should be physically stamped and the return reason code should be included in the image. However, many image cameras are not able to detect red ink, so if the items are stamped with return reason stamps printed in red ink, they may not be displayed. **Returning banks are advised to use blue or black ink to ensure image survivable return reason stamps.**

8.      D2. <u>Question:</u>  What is the difference between an electronic indorsement and addendum record?

<u>Answer:</u>  An electronic indorsement is an addendum record. The ECCHO Rules define an Electronic Indorsement (See Section I(Q)) as an electronic record associated with the Electronic Image or Electronic Image/Return that identifies the routing number of the bank that handled the Electronic Image or Electronic Image/Return and conforms to applicable industry standards (See ANSI X9.100-187) for the use of electronic indorsements in check image collection. In the ANSI X9.100-187 file, the Check Detail Addendum A Record (Type 26), Return Addendum A Record (Type 32), Check Detail Addendum C Record (Type 28) and Return Addendum D Record (Type 35) carry the electronic indorsements. Electronic indorsements should not be confused with physical indorsements which are printed, stamped or written on the back of a check or overlay indorsements which are electronically placed on the image. Electronic indorsement records are not part of the physical check, do not appear on the image of the check and are not visual in the image of the check.

9.      <u>Question:</u>  Is the Sending Bank required to provide an Electronic Indorsement for all Electronic Images?

<u>Answer:</u>  Yes. The Rules require the Sending Bank to provide an Electronic Indorsement that indicates whether it is the Depositary Bank or a Collecting Bank. Each Sending Bank must provide an Electronic indorsement (See Section XIX(E)(2)). A Sending Bank that is the Depositary Bank is required to include in its Electronic Indorsement the routing number for the return of the Electronic Image (See Section XIX(E)(3)).

**10.**    *Q: What is the best approach for determining which is a forward file and which is a return file upon receipt?*

*A: There are a number of ways to identify FedReceipt Forward files and FedReceipt Return files. These include: Opening a file to determine for sure whether it is a forward or return file is the most reliable approach to identifying forward from return files. Return files can be differentiated by looking in the Field 2 Collection Type Indicator in the Type 10 Cash Letter Header Record. Return files have a "03" in Field 2 while forward files contain a "01" in that location.*

**11.**    *Q: Why do some return items not include a valid Return Reason stamp in the image?*

*A: When an item is received electronically and returned electronically, it may not be physically stamped for a return reason code to be shown in the image. Instead, the Return Reason Code will be inserted into the Type 31 record and also into the Type 35 record. When an electronic return is created from a paper item, the item should be physically stamped and the return reason code should be included in the image. However, many image cameras are not able to detect red ink, so if the items are stamped with return reason stamps printed in red ink, they may not be displayed.* ***Returning banks are advised to use blue or black ink to ensure image survivable return reason stamps.***

**12.**    *Q: Why can't I see the usual indorsements on the rear image of checks in the FedReceipt file?*

*A: In the paper check world, financial institution's indorsements appear as printed ink characters on the back of a check. In the post-Check 21 world, the paper is converted to an image of the item and may later be reconverted into a Substitute Check. When the item is an image there is no paper on which to print an indorsement, so at that stage financial institutions add an electronic indorsement to the collection of data records that represents the check.*

**13.**    *Each subsequent financial institution that processes an electronic item adds its indorsement electronically to the data records for that item. These electronic indorsements are not visible on the rear image of the item in a FedReceipt file.*

*Should you need to return such an item, you may do so as an Unqualified Mixed Return. If you are a FedReturn institution, you can qualify the item to the Federal Reserve Bank you are depositing with. The Federal Reserve will handle the item as a raw return (raw return fee assessed).*

**14.**    *Q: How can I see the electronic indorsements in a Check 21 FedReceipt file?*
*A: Your financial institution's software vendor should have a means for your staff to view electronic indorsements by looking at records other than the image record in the FedReceipt file. Each electronic*



indorsement is a record in the FedReceipt file that follows the ANSI X9.37 (Off-site Link) specifications available from www.X9.org (Off-site Link).

**15.**   **Q:** *Are electronic indorsements visible on substitute checks?*

**A:** *Yes. Any software that prints substitute checks is required to print the electronic indorsements. A substitute check includes the front and rear images of the check which is a picture of the check when it was converted to an electronic item. Any financial institution that processed the imaged item added an electronic indorsement. When the imaged item is reconverted into a substitute check, these electronic indorsements are printed on top of the rear image of the check as an overlay.*

*When reviewing a sample substitute check (PDF), the standard ink indorsements are printed from left to right or horizontally on the substitute check. The electronic indorsements are overlaid on the substitute check and appear vertically or from top to bottom. Note that this substitute check has the BOFD's indorsement on the item twice; once from the image of the physical ink indorsement on the paper item and again as an overlay printing of the electronic indorsement. Other electronic, subsequent processor indorsements appear at the right end of the substitute check.*

**16.**   **Q:** *Do electronic indorsements meet legal requirements?*

**A:** *Yes. Whether printed on a substitute check, or as an electronic record in an ANSI X9.37 FedReceipt file, an electronic indorsement has the same legal effect as a printed indorsement on a paper check. The legal basis of electronic indorsements is founded in Regulations J and CC as well as the Federal Reserve's Operating Circular 3 and legal agreements between the Federal Reserve Banks and financial institutions subscribing to services such as FedForward, FedReturn and FedReceipt. Note that electronic Bank of First Deposit indorsements printed on a substitute check are not required to have the BOFD's name printed on the indorsement, as required for paper checks*

### Federal Reserve Net Settlement

With the use of Federal Reserve Net Settlement, transactions are settled accurately each deposit cycle. Federal Reserve Net Settlement allows participants in private clearing arrangements to exchange and settle transactions on a net basis through reserve or clearing account balances. This process enables financial institutions to feel confident that every transaction they consummate electronically is settled accurately and with finality.

All trades are administered through a United States check clearing house. Check presentment, image exchange, and clearing occur in accordance with ECCHO rules and Regulation CC. Regulation CC and the Uniform Commercial Code determine return deadlines based, in part, on presentment time, ensuring timely notification.

Transactions are traded in near realtime, generating settlement totals for netsettlement to the Federal Reserve in accordance with the deposit deadlines set by clearing houses. Settlement entries consider time zone changes from Hawaii to Puerto Rico.

27

**Evidence provided by Fifth Third Bank to substantiate their claim that the check was returned**



CHECK #1

3    2    1

*061000146*
04/26/2013
3220395537

0420-0031-4    FRAUDULENT ITEM

PETER TERRY PAPOULIAS          FEDERAL RESERVE BANK          2018
4175 BRECKENRIDGE CT                                        4/25/2013
ALPHARETTA, GA, 30005

Pay To The
Order Of          JAMES A WILLIAMS TRUST                    $4,500.00

Four Thousand Five Hundred  Dollars and No Cents

                                        No Signature Required
                                        Electronic Signature On File
                                        This Check Has Been Electronically
                                        Authorized By Voice Or Electronic
                                        Verification By Your Depositor

2015    041000014  008387555 0    0000450000

2015    041000014    008387555 0    0000450000

4    25004200314    0000450000

FRAUDULENT

For deposit Only

Do not endorse or write below this line.

| Posting Date | 2013 Apr 30 |
|---|---|
| Trips Sequence Number | 1002409 |
| Charge Account Number | 7460552230 |
| Work Source | 000215 |
| Advice Number | 101388 |
| Deposit Date | 20130430 |
| Return Reason | Refer to Maker  5 |
| Operator | T3728AD |

28

**FIFTH THIRD BANK**
MD: 1MOC2X Cincinnati, Ohio 45263
Date: Apr 30, 2013  Advice D-101388

*Acct:*   *46/7460552230*

**CHECK #1**

*Your account has been charged for each
return item listed*

*If you have any questions please contact
your nearest Fifth Third Banking center*

**SEQ #**
1002409

**ITEM AMOUNT**
4,500.00

**Return item that was mailed by Fifth Third Bank one week after they emailed exhibit 9a.
Notice the numerous additional alterations and fraudulent entries made by Fifth Third Bank.**

JAMES A WILLIAMS TRUST
4175 BRECKENRIDGE CT
ALPHARETTA GA 30005

1 Item charged totaling $4,500.00

Advice Total $4,500.00

1:402333198: 0000074605522230 /0000101388/

3
*042000314*
04/30/2013
1002409

This is a LEGAL COPY of your
check. You can use it the same
way you would use the original
check.

RETURN REASON-X
REFER TO IMAGE



29

**CHECK #2**



2  *044000037*
04\30\2013
00330444115
This is a LEGAL COPY of your check. You can use it the same way you would use the orginel check.

LIANNE BATEMAN
4175 BRECKENRIDGE CT
ALPHARETTA, GEORGIA, 30005

1   FEDERAL RESERVE BANK OF ATLANTA   2300
4/29/2013

INVALID ROUTING #

Pay To The
Order Of      JAMES A WILLIAMS TRUST                      $4,500.00

Four Thousand Five Hundred  Dollars and No Cents

2013/96

No Signature Required
Electronic Signature On File
This Check Has Been Electronically Authorized By Voice Or Electonic Varification By Your Deposaor

ı" 2300ı"   ı:06 1000 146:006409 5 150ı"  ı"0000450000ı"

ı"00 2300ı"   4:06 1000 146:      5   64095150ı"ı"0000450000ı"

3 →

SW RETURNS
APR 30 2013
6
For Deposit Only                                    4

↓Do not endorse or write below this line↓

| | |
|---|---|
| Posting Date | 2013 May 01 |
| Trips Sequence Number | 1001904 |
| Charge Account Number | 7460552230 |
| Work Source | 000131 |
| Advice Number | 101853 |
| Deposit Date | 20130430 |
| Return Reason | Refer to Maker   7 |
| Operator | T26719A |

30



**FIFTH THIRD BANK**
MD: 1MOC2X Cincinnati, Ohio 45263
Date: May 06, 2013   Advice D-101629

*Acct:   46/7460552230*

**CHECK #3**

*Your account has been charged for each
return item listed*

*If you have any questions please contact
your nearest Fifth Third Banking center*

**SEQ #**
1003669

**ITEM AMOUNT**
9,750.00

JAMES A WILLIAMS TRUST
4175 BRECKENRIDGE CT
ALPHARETTA GA  30005

1 Item charged totaling  $9,750.00

Advice Total  $9,750.00

⑊402333198⑊    0000074605552230⑊    ⑊0000101629⑊



31

**FIFTH THIRD BANK**
MD: 1MOC2X Cincinnati, Ohio 45263
Date: May 06, 2013  Advice D-101628

*Acct:*  46/7460552230

# CHECK #4

*Your account has been charged for each return item listed*

*If you have any questions please contact your nearest Fifth Third Banking center*

| SEQ # | ITEM AMOUNT |
|-------|-------------|
| 1001598 | 9,500.00 |
| 1001599 | 9,500.00 |
| 1003667 | 9,500.00 |
| 1003670 | 9,500.00 |
| 1003671 | 9,500.00 |
| 1001600 | 9,750.00 |
| 1001597 | 9,750.00 |
| 1003668 | 9,750.00 |

JAMES A WILLIAMS TRUST
4175 BRECKENRIDGE CT
ALPHARETTA GA  30005

**8 Items charged totaling $76,750.00**

**Advice Total $76,750.00**

⑃4023331⑃8⑃ 00000746055⑃230⑃ ⑃000010⑃628⑃

---

**2**

*042000314*
05/06/2013
1001598

This is a LEGAL COPY of your check. You can use it the same way you would use the original check.

RETURN REASON–S
REFER TO MAKER

**1** REFER TO MAKER

LIANNE BATEMAN
4175 BRECKENRIDGE CT
ALPHARETTA, GEORGIA, 30005

FEDERAL RESERVE BANK

2301
5/2/2013

Pay To The
Order Of    JAMES A WILLIAMS TRUST

$9,500.00

Nine Thousand Five Hundred  Dollars and No Cents

2013180

No Signature Required
**Electronic Signature On File**
This Check Has Been Electronically Authorized By Voice Or Electronic Verification By Your Depositor

**3** INVALID ROUTING #

⑃2301⑃ ⑃061000146⑃0064095150⑃ ⑃0000950000⑃

---

⑃00230⑃ 4⑃061000146⑃ 0064095150⑃ ⑃0000950000⑃

**4** →



**5**

**6** ↓

SW RETCH

MAY 0 3 2013

**7**

**8**

↓Do not endorse or write below this line↓

32



2 *042000314*
05/06/2013
1001599

This is a LEGAL COPY of your check. You can use it the same way you would use the original check.

RETURN REASON-S
REFER TO MAKER

1 REFER TO MAKER

LIANNE BATEMAN
4175 BRECKENRIDGE CT
ALPHARETTA, GA. 30005

FEDERAL RESERVE BANK

2302
5/2/2013

Pay To The
Order Of      JAMES A WILLIAMS TRUST

$9,500.00

Nine Thousand Five Hundred Dollars and No Cents

2013 1/2

3 INVALID ROUTING #

No Signature Required
Electronic Signature On File
This Check Has Been Electronically
Authorized By Voice Or Electronic
Verification By Your Depositor

⑈230⑈ ⑆06⑈000⑈46⑆006⑈095⑈50⑈ ⑈0000950000⑈

4 →

⑈0023021⑈ ⑆061000146⑆ 0064095150⑈ ⑈0000950000⑈

CHECK #5



6 ↓

7

8

5

SW RETURNS

MAY 0 3 2013

↓Do not endorse or write below this line↓

33



2

*042000314*
05/06/2013
1003667

This is a LEGAL COPY of your
check. You can use it the same
way you would use the original
check.

RETURN REASON-X
REFER TO IMAGE

1

**REFER TO IMAGE**

PETER TERRY PAPOULIAS
4175 BRECKENRIDGE CT
ALPHARETTA, GA, 30005

FEDERAL RESERVE BANK

2021
5/2/2013

Pay To The
Order Of     JAMES A WILLIAMS TRUST

$9,500.00

Nine Thousand Five Hundred Dollars and No Cents

3

**FRAUDULENT ITEM**

No Signature Required
Electronic Signature On File
This Check Has Been Electronically
Authorized By Voice Or Electronic
Verification By Your Depositor

4     DO NOT REDEPOSIT

⑅2021⑅ ⑈⑇0410000 14⑇⑈0083875550⑈ ⑆0000950000⑆

5     ⑈⑇0410000 14⑇⑈     0083875550⑈     ⑆0000950000⑆

6     ⑅2021⑅ ⑈⑇0410000 14⑇⑈     0083875550⑈     ⑆0000950000⑆

**CHECK #6**



34

CHECK #7



**1** REFER TO IMAGE

**2** *042000314*
05/06/2013
1003670

This is a LEGAL COPY of your check. You can use it the same way you would use the original check.

RETURN REASON-X
REFER TO IMAGE

PETER TERRY PAPOULIAS
4175 BRECKENRIDGE CT
ALPHARETTA, GA, 30005

FEDERAL RESERVE BANK

2020
5/2/2013

Pay To The
Order Of JAMES A WILLIAMS TRUST

$9,500.00

Nine ... Dollars and No Cents

**3**

COPY OF ORIGINAL
DO NOT REDEPOSIT
RETURN ITEM

**4**

FRAUDULENT ITEM

No Signature Required
Electronic Signature On File
This Check Has Been Electronically
Authorized By Voice Or Electronic
Verification By Your Depositor

⑈ 20 20 ⑈ ⑆04 10000 14⑆ 0083875550⑈ ⑊0000950000⑊

**5** )⑈ 4⑆04 10000 14⑆ 0083875550⑈ ⑊0000950000⑊

**6** ⑈ 20 20 ⑈ 4⑆04 10000 14⑆ 0083875550⑈ ⑊0000950000⑊



**7**

**8**

**9**

↓Do not endorse or write below this line.↓

FIFTH THIRD BANK
>>042000314<<
5/2/2013
1006590000010
IT#8855230

05/05/2013    001003355 0

# CHECK #8

**2** *042000314*
05/06/2013
1003671

This is a LEGAL COPY of your check. You can use it the same way you would use the original check.

RETURN REASON-X.
REFER TO IMAGE

**1** REFER TO IMAGE



PETER TERRY PAPOULIAS
4175 BRECKENRIDGE CT
ALPHARETTA, GA, 30005

FEDERAL RESERVE BANK

2022
5/2/2013

Pay To The
Order Of      JAMES A WILLIAMS TRUST

$9,500.00

Nine Thousand Five Hundred Dollars and No Cents

**4** DO NOT REDEPOSIT

**3** FRAUDULENT ITEM

No Signature Required
Signature On File
This Check Has Been Electronically
Authorized By Voice Or Electronic
Verification By Your Depositor

I⁰ 2022 I²    ⑆04 10000 14⑈008 3875 550I⁰  ⑈0000 950000⑈

**5** 2 I⁰    4⑈04 10000 14⑈    008 3875 550I⁰    ⑈0000 950000⑈

**6** I⁰ 2022 I⁰    4⑈04 10000 14⑈    008 3875 550I⁰    ⑈0000 950000⑈



CHECK #9



**REFER TO MAKER**

2

\*042000314\*
05/06/2013
1001600

This is a LEGAL COPY of your
check. You can use it the same
way you would use the original
check.

RETURN REASON-S
REFER TO MAKER

1

LIANNE BATEMAN
4175 BRECKENRIDGE CT
ALPHARETTA, GA. 30005

FEDERAL RESERVE BANK

2303
5/2/2013

Pay To The
Order Of      JAMES A WILLIAMS TRUST                    $9,750.00

Nine Thousand Seven Hundred Fifty  Dollars and No Cents      3

2013183

No Signature Required

Electronic Signature On File

INVALID ROUTING #

This Check Has Been Electronically
Authorized By Voice Or Electronic
Verification By Your Depositor

I⁰ 2303 I⁰      ⊏06 1000 146⊏006 4095 150I⁰  ⁰0000975000⁰

I⁰00 2303 I⁰   4⊏06 1000 146⊏         006 4095 150I⁰   ⁰0000975000⁰

4

5

6

SW RETURNS

MAY 0 3 2013

7

8

FIFTH THIRD BANK
>>043000314<<
5/2/2013
1006504000017
#746056250

↓Do not endorse or write below this line↓

37

**CHECK #10**

**1** | REFER TO MAKER

**2** | *042000314*
05/06/2013
1001597

This is a LEGAL COPY of your check. You can use it the same way you would use the original check.

RETURN REASON-S
REFER TO MAKER



LIANNE BATEMAN          FEDERAL RESERVE BANK          2304
4175 BRECKENRIDGE CT                                 5/2/2013
ALPHARETTA, GA, 30005

Pay To The
Order Of     JAMES A WILLIAMS TRUST                  $9,750.00

Nine Thousand Seven Hundred Fifty  Dollars and No Cents

2013195                                              No Signature Required
                                                     Electronic Signature On File
**3** | INVALID ROUTING #                             This Check Has Been Electronically
                                                      Authorized By Value Or Electronic
                                                      Verification By Your Depositor

⑈2304⑈  ⑆061000146⑆0064095150⑈ ⑈0000975000⑈

⑈0023041⑈  4⑆061000146⑆      0064095150⑈ ⑈00000975000⑈

**4** | →

**5** | **6** | ↓ | **7** | **8**

SW RETURNS

MAY 0 3 2013

↓Do not endorse or write below this line↓



**CHECK #11**



2  \*042000314\*
05/06/2013
1003668

This is a LEGAL COPY of your check. You can use it the same way you would use the original check.

RETURN REASON-X
REFER TO IMAGE

1  REFER TO IMAGE

PETER TERRY PAPOULIAS
4175 BRECKENRIDGE CT
ALPHARETTA, GA, 30005

FEDERAL RESERVE BANK

2024
5/2/2013

Pay To The
Order Of    JAMES A WILLIAMS TRUST

$9,750.00

Nine Thousand Seven Hundred Fifty Dollars and No Cents

3  FRAUDULENT ITEM

COPY OF ORIGINAL
DO NOT REDEPOSIT
RETURN ITEM

4

No Signature Required
Electronic 'Signature' On File

This Check Has Been Electronically Authorized By Voice Or Electronic Verification By Your Depositor

⑊2024⑊  ⑊04⑊0000⑊4⑊:008387555O⑊  ⑊000097500O⑊

5  ⑊⑊  ⑊:04⑊0000⑊4⑊:  008387555O⑊  ⑊000097500O⑊

6  ⑊2024⑊  ⑊:04⑊0000⑊4⑊:  008387555O⑊  ⑊000097500O⑊



**FIFTH THIRD BANK**
MD: 1MOC2X Cincinnati, Ohio 45263
Date: May 14, 2013 Advice D-101419

*Acct: 46/7460552230*

## CHECK #12

Your account has been charged for each
return item listed

If you have any questions please contact
your nearest Fifth Third Banking center

| SEQ # | ITEM AMOUNT |
|---|---|
| 1001116 | 9,750.00 |
| 1001117 | 9,750.00 |
| 1001118 | 9,750.00 |
| 1003121 | 9,750.00 |
| 1003122 | 9,750.00 |
| 1003123 | 9,750.00 |

JAMES A WILLIAMS TRUST
4175 BRECKENRIDGE CT
ALPHARETTA GA 30005

6 Items charged totaling $58,500.00

Advice Total $58,500.00

�electronic routing⑨ 00000746055223000 00000101419

---

2
\*042000314\*
05/14/2013
1001117

This is a LEGAL COPY of your
check. You can use it the same
way you would use the original
check.

RETURN REASON-S
REFER TO MAKER

1 **REFER TO MAKER**

LIANNE BATEMAN
4175 BRECKNRIDGE CT
ALPHARETTA, GA, 30005

FEDERAL RESERVE BANK

2312
5/10/2013

Pay To The
Order Of    JAMES A WILLIAMS TRUST

$9,750.00

Nine Thousand Seven Hundred Fifty  Dollars and No Cents

3 **INVALID ROUTING #**

No Signature Required
Electronic Signature On File
This Check Has Been Electronically
Authorized By Voice Or Electronic
Verification By Your Depositor

2312 061000146 0064095150 00009750000

002312 4 061000146 0064095150 00009750000

6 SW RETURNS
MAY 1 3 2013

↓Do not endorse or write below this line↓

40

**CHECK #13**



1 **REFER TO MAKER**

2
```
*042000314*
05/14/2013
1001118
```
This is a LEGAL COPY of your
check. You can use it the same
way you would use the original
check.

RETURN REASON-S
REFER TO MAKER

LIANNE BATEMAN
4175 BRECKNRIDGE CT
ALPHARETTA, GA, 30005

FEDERAL RESERVE BANK

2311
5/10/2013

Pay To The
Order Of    JAMES A WILLIAMS TRUST

$9,750.00

Nine Thousand Seven Hundred Fifty Dollars and No Cents

3 **INVALID ROUTING #**

No Signature Required

Electronic Signature On File

This Check Has Been Electronically
Authorized By Voice Or Electronic
Verification By Your Depositor

4 ⟶



5

6 SW RETURNS

MAY 1 3 2013

7

8

↓Do not endorse or write below this line↓

FIFTH THIRD BANK
>>042000314<<
5/10/2013
#7440352250
1000504000031

41

CHECK #14

**2**
*042000314*
05/14/2013
1003121

This is a LEGAL COPY of your check. You can use it the same way you would use the original check.

RETURN REASON-X
REFER TO IMAGE

**1** REFER TO IMAGE



PETER TERRY PAPOULIAS
4175 BRECKENRIDGE CT
ALPHARETTA, GA, 30005

FEDERAL RESERVE BANK

2141
5/10/2013

Pay To The
Order Of   JAMES A WILLIAMS TRUST

$8,750.00

Nine Thousand Seven Hundred Fifty  Dollars and No Cents

No Signature Required
**Electronic Signature On File**
This Check Has Been Electronically
Authorized By Voice Or Electronic
Verification By Your Depositor

**3** FRAUDULENT ITEM

⑈2141⑈  ⑈:04 10000 14⑈:0083875550⑈  ⑈0000975000⑈

**5** ⑈⑈

4:04 10000 14:      0083875550⑈      ⑈0000975000⑈

**6**  4:04 10000 14:      0083875550⑈  ⑈0000975000⑈



**7**  **8**  **9**

**CHECK #15**



2 *042000314*
05/14/2013
1003122

This is a LEGAL COPY of your check. You can use it the same way you would use the original check.

RETURN REASON-X
REFER TO IMAGE

1 REFER TO IMAGE

PETER TERRY PAPOULIAS
4175 BRECKENRIDGE CT
ALPHARETTA, GA, 30005

FEDERAL RESERVE BANK

2142
5/10/2013

Pay To The
Order Of    JAMES A WILLIAMS TRUST

$9,750.00

Nine Thousand Seven Hundred Fifty Dollars and No Cents

No Signature Required
Electronic Signature On File
This Check Has Been Electronically Authorized By Voice Or Electronic Verification By Your Depositor

3 FRAUDULENT ITEM

⑈2142⑈ ⑆042000014⑆008387555 0⑈ ⑈0000975000⑈

5 3⑈

4⑆042000014⑆    0083875550⑈    ⑈0000975000⑈

6 4⑆042000014⑆    0083875550⑈ ⑈0000975000⑈



43

**CHECK #16**

2  \*042000314\*
05/14/2013
1003123

This is a LEGAL COPY of your
check. You can use it the same
way you would use the original
check.

RETURN REASON-X
REFER TO IMAGE

1 



PETER TERRY PAPOULIAS
4175 BRECKENRIDGE CT
ALPHARETTA, GA. 30005

FEDERAL RESERVE BANK

2140
5/10/2013

Pay To The
Order Of   JAMES A WILLIAMS TRUST

$9,750.00

Nine Thousand Seven Hundred Fifty Dollars and No Cents

2013210   3 **FRAUDULENT ITEM**

No Signature Required
Electronic Signature On File
This Check Has Been Electronically
Authorized By Voice Or Electronic
Verification By Your Depositor

⑈2140⑈  ⑆04100001⑇0083875550⑈  ⑈0000975000⑈

5  )⑈  4⑆0410000⑇4⑆   0083875550⑈   ⑈0000975000⑈

6  4⑆0410000⑇4⑆   0083875550⑈   ⑈0000975000⑈



0⑆13/2013   0010172560

**CHECK #17**



2

\*042000314\*
05/14/2013
1001116

This is a LEGAL COPY of your check. You can use it the same way you would use the original check.

RETURN REASON-S
REFER TO MAKER

1  **REFER TO MAKER**

LIANNE BATEMAN
4175 BRECKNRIDGE CT
ALPHARETTA, GA, 30005

FEDERAL RESERVE BANK

2310
5/10/2013

Pay To The
Order Of     JAMES A WILLIAMS TRUST

$9,750.00

Nine Thousand Seven Hundred Fifty Dollars and No Cents

2013/26

No Signature Required
Electronic Signature On File

This Check Has Been Electronically
Authorized By Value Or Electronic
Verification By Your Depositor

3  **INVALID ROUTING #**

⑆2310⑈  ⑆061000146⑈0064095150⑈  ⑆0000975000⑈

⑆002310⑈  ⑆061000146⑈  0064095150⑈  ⑆0000975000⑈

4  ———————————→

5

6

7

8

8W RETURNS

NOV 1 3 2013

FIFTH THIRD BANK
>>042000314<<
5/10/2013
100606400003o
#7440550230

*Do not endorse or write below this line*

45

***INFORMATION REGARDING THE ERRORS FOUND IN EXHIBIT #8:***

***NOTE:*** *An example of a qualified return of a commercial check can be found in Exhibit #13.*

The Defendant(s) have ignored the Plaintiff's numerous requests to provide copies of the image return cash letters or the addendum records (electronic indorsements). It is clearly obvious from the Defendant(s) actions and failure to act that the image return cash letters do not exist.

***PROBLEMS WITH CHECK #1 THAT WAS SENT BY EMAIL***

*Plaintiff received this evidence by email from Clare Huckabe.*

***Item #1:*** *The Defendant(s) physically stamped the words "FRAUDULENT ITEM" on the copy of the image after it was printed. FRAUDULENT ITEM does not appear on the current list of return codes and their associated reasons as documented in the X9.100-187 standard (see exhibit #15). The location and method for entering a valid return code can be found in Exhibit #13, Item #1.*

***Item #2:*** *The routing number 042000314 was written on the copy of the image after it was printed. The ABA entry is pointless.*

***Item #3:*** *Shows that the item was settled/paid by the Federal Reserve Bank of Atlanta on April 26, 2013. The number 3220395537 located below the date is called the "Endorsing Bank Item Sequence Number". This number identifies the item at the endorsing bank.*

***Item #4:*** *ANSI X9.100-140 requires that a "5" be placed in the EPC position for all qualified returns of a substitute check. In the return process, a "5" is placed on the qualified return strip, or perforated strip attached to a substitute check. Whether a returning bank creates the substitute check or the returning bank receives a substitute check through inclearings and returns that item, the "5" must be in position 44.*

***Item #5:*** *Current commentary to § 229.30(d) states that "refer to maker" may be a permissible reason for return in appropriate cases but does not elaborate as to which cases may be appropriate. The Board, however, does not believe that "refer to maker," by itself, is an appropriate reason for return in any case. "Refer to maker" is an instruction rather than a reason for return. Alone, it does not provide the depositary bank with sufficient information to determine whether it should represent the check. Accordingly, the Board proposes to amend the commentary to § 229.30(d) to state that "refer to maker" is insufficient as a reason for return, because "refer to maker" is an instruction to the recipient of the returned check and not a reason for return (e.g., insufficient funds).*

***PROBLEMS WITH CHECK #1 THAT WAS SENT BY POST***

***Item #1:*** *The Defendant(s) physically stamped the words "FRAUDULENT ITEM" on the copy of the image after it was printed. FRAUDULENT ITEM does not appear on the current list of return codes and their associated reasons as documented in the X9.100-187 standard (see exhibit #15). The location and method for entering a valid return code can be found in Exhibit #13, Item #1.*

***Item #2:*** *The routing number 042000314 was written on the copy of the image after it was printed. The ABA entry is pointless.*

38  **Item #3:** *The information in this area did not exist on the previous IRD that was sent by email. By*
39  *adding this information the Defendant(s) were attempting to cover-up the previous Federal Reserve*
40  *Bank of Atlanta's endorsement information found in item #5.*

41  **Item #4:** *The Defendant(s) physically stamped the words "REFER TO IMAGE" right over top of the*
42  *Federal Reserve Bank of Atlanta's endorsement information after the image was printed.*

43          ***"X" Refer to Image – Return Reason information is contained within the image of***
44  ***the item.*** *– This code can be used when the creator of an image return knows that a return reason*
45  *already exists on the face of the item. The return reason may have been stamped on the item by the*
46  *paying bank or printed on the face of the item in the creation of a Substitute Check. This code is*
47  *generally used by an intermediary processor when a paper return item is received and is being*
48  *converted to an image. If the creator of the return is unsure whether a return reason has been placed*
49  *on the face of the item, this code should not be used. Since an intermediary would not know the actual*
50  *return reason without physically examining the item, this use of the code promotes efficient*
51  *processing of that return.*

52          *This code should not be used by a paying bank in an electronic image return file. A paying*
53  *bank is required (by law) to identify the reason for return. The future direction should be when*
54  *printing a Substitute Check the "Refer to Image" verbiage should not be printed on the face of the*
55  *Substitute Check, since the actual return reason should already appear in the image of the check.*

56          *If the "Refer to Image" verbiage is printed on the Substitute Check it should not obscure*
57  *important information on the face of the check1. Use of this code when the return reason appears on*
58  *the face of the item can cause undesirable impacts to BOFD"s downstream applications. Banks that*
59  *receive returns with both an "X" and a return reason on the face of the item, may choose to change the*
60  *reason "X" to the return reason that appears on the item.*

61  **Item #5:** *Shows that the item was settled/paid by the Federal Reserve Bank of Atlanta on April 26,*
62  *2013. The number 3220395537 located below the date is called the "Endorsing Bank Item Sequence*
63  *Number". This number identifies the item at the endorsing bank.*

64  **Item #6:** *ANSI X9.100-140 requires that a "5" be placed in the EPC position for all qualified returns*
65  *of a substitute check. In the return process, a "5" is placed on the qualified return strip, or perforated*
66  *strip attached to a substitute check. Whether a returning bank creates the substitute check or the*
67  *returning bank receives a substitute check through inclearings and returns that item, the "5" must be*
68  *in position 44.*

69  **Item #7:** *The MICR line that was manually applied by the Defendant(s) is erroneous and irrelevant.*

70  **Item #8:** *The Defendant(s) had manually applied this indorsement information to extend the date*
71  *when the item was processed. The manipulation of the processing date by the Defendant(s) is*
72  *erroneous and completely unnecessary. The Defendant(s) had sent the item to the Federal Reserve*
73  *Bank of Atlanta on April 25, 2013 at 11:59 p.m. Therefore since the item was presented through a*

47

74   *Federal Reserve Bank, accountability results at the end of the banking day unless the payor bank*
75   *settles by then. 12 CFR 210.9.*

76   *Title 12 CFR 210.9 (b) Cash items —(1) Settlement obligation. On the day a paying bank*
77   *receives [2] a cash item from a Reserve Bank, it shall settle for the item such that the proceeds of the*
78   *settlement are available to its Administrative Reserve Bank by the close of Fedwire on that day, or it*
79   *shall return the item by the later of the close of its banking day or the close of Fedwire. If the paying*
80   *bank fails to settle for or return a cash item in accordance with this paragraph (b)(1), it is accountable*
81   *for the amount of the item as of the close of its banking day or the close of Fedwire on the day it*
82   *receives the item, whichever is earlier.*

83   **Item #9:** *Shows that the item was settled/paid by the Federal Reserve Bank of Atlanta on April 26,*
84   *2013. The number 3220395537 located below the date is called the "Endorsing Bank Item Sequence*
85   *Number". This number identifies the item at the endorsing bank.*

86   **Item #10:** *Evidences the fact that the Defendant(s) had created the image by cutting and pasting*
87   *information from various different sources.*

88   **Item #11:** *The additional endorsements were manually placed into the image by the defendant(s). It*
89   *is clearly evident that the endorsement entries were completely fabricated by the Defendant(s) with*
90   *the intent to defraud the Plaintiff:* **1.** *The entries do not conform with the ANSI X9.100-140*
91   *Specifications for an Image Replacement Document (IRD);* **2.** *The endorsing bank item sequence*
92   *number 51837940 is identical to the item sequence number listed in item #8. Furthermore, the item*
93   *sequence number is only 8 digits in length. As stated in Exhibit #16 the Federal Reserve Bank's current*
94   *sequence number format is a fixed 10 digit sequence number.*

95   ***PROBLEMS WITH CHECK #2***

96   **Item #1:** *The Defendant(s) physically stamped the words "INVALID ROUTING #" on the copy of the*
97   *image after it was printed. The immediate problem with this return reason is that if the MICR line had*
98   *in fact contained an invalid routing number, then how was it possible that the item was settled/paid by*
99   *the payor bank. "The payor bank will process the checks primarily relying on the MICR line*
100  *information contained in the electronic file and reviewing the electronic images only to the extent that*
101  *its internal procedures so require[1]. If the payor bank decides to return one or more of the checks*
102  *contained in the image cash letter, it will do so by creating a return image cash letter and sending it*
103  *back to the bank of first deposit" (Loyola of Los Angeles Law Review: 11-1-2006; An Endangered*
104  *Species: The Increasing Irrelevance of Article 4 of the UCC in an Electronics-Based Payments System).*
105  *The entire process from start to finish is completely automated (without human intervention).*

106  *Furthermore, if an item contained an invalid routing number than the return overlay printed*
107  *on the original IRD for return would state "RETURN REASON-R; BRANCH/ACCOUNT SOLD*

---

[1] Typically, a payor bank will set a dollar threshold which triggers a manual review of presented checks. The check images can also be used by the payor bank to create image statements for its customers or even to create a substitute check. See *infra* note 8 for a definition of substitute check.

*48*

108  *(WRONG BANK) – DIVESTED ACCOUNT, NOT OUR ITEM".  The location and method for entering a*
109  *valid return code can be found in Exhibit #13, Item #1.*

110  *"R" **Branch/Account Sold (Wrong Bank) – Divested Account, Not Our Item** – This code is*
111  *also multi-purpose and may be used for any of the named reasons: Branch/Account Sold/Wrong*
112  *Bank/Divested Account or Not Our Item. The most common use is Not Our Item (NOI) and should*
113  *only be used when a forward item is not drawn on the paying bank or when a return was returned*
114  *and charged to an entity other than the depositary bank, the depositary bank's agent or any*
115  *subsequent collecting bank. It is used when a bank has sold/divested branches or accounts. <u>It may</u>*
116  *<u>also be used when the routing number in the record is incorrect, which includes routing numbers that</u>*
117  *<u>are no longer used (retired RTs) (see exhibit #15).</u>*

118  ***Item #2:*** *The bank indorsement information found in this area is erroneous and was completely*
119  *fabricated by the Defendant(s) with the intent to defraud the Plaintiff. The routing number*
120  *044000037 is used by J.P. Morgan Chase Bank N.A.. It is impossible that J.P. Morgan Chase Bank*
121  *would somehow be involved with the Plaintiffs' Image Cash Letter deposit process. As stated in*
122  *Exhibit #1 each one of the Plaintiffs' checks were processed in the following manner:*

123  *i)      The Plaintiff hired a company called CheckAlt to convert the Plaintiffs' checks into ICL's;*
124  *ii)      CheckAlt forwarded the ICL's to the back offices of the Defendant(s);*
125  *iii)      The Defendant(s) submitted the ICL's to the Federal Reserve Bank of Atlanta for processing;*
126  *iv)      As soon as the payor banks settled/paid for the items, the Defendant(s) posted the funds to the*
127  *Plaintiffs' business checking account. NOTE: Since the ICL files are processed through the*
128  *Defendant(s) back office there are no provisional credits. The ICL file either posts to the Plaintiffs'*
129  *account or is returned unpaid.*

130  *Furthermore, the Plaintiff had received a FRB File Deposit Acknowledgement Report showing all 25*
131  *deposited items (see pages 20, 21, 24, 25, 31, 32, 37, 38 from exhibit #1 and exhibit #4).*

132  ***Item #3:*** *The item is missing the MICR line showing the IRD for Qualified Return Notification "5",*
133  *the Routing number for the BOFD, and the check total.*

134  ***Item #4:*** *The bank indorsement information found in this area is erroneous and was completed*
135  *fabricated by the Defendant(s) with the intent to defraud the Plaintiff. The routing number*
136  *074909962 is used by J.P. Morgan Chase Bank N.A.. Furthermore, lines 121 – 130 is incorporated by*
137  *reference as though fully stated herein.*

138  ***Item #5:*** *The MICR line data does not match the MICR line data from the original item and the*
139  *placement of this data does not conform with the ANSI X9.100-140 Specifications for an Image*
140  *Replacement Document (IRD).*

141  ***Item #6:*** *Shows that the Defendant(s) used multiple image date to create the IRD item.*

142  ***Item #7:*** *Lines 24 – 31 is incorporated by reference as though fully stated herein.*

143

144  ***PROBLEMS WITH CHECK NUMBER 3, 6, 7, 8, 11, 14, 15 and 16***

145  ***Item #1:*** *Lines 42 – 61 is incorporated by reference as though fully stated herein.*

49

146  **Item #2:** *The bank indorsement information found in this area is erroneous and was completely*
147  *fabricated by the Defendant(s) with the intent to defraud the Plaintiff. In accordance with ANSI*
148  *X9.100-140 the endorsement data in this item must match the endorsement data listed in item #9.*
149  **Item #3:** *Lines 10 – 13 is incorporated by reference as though fully stated herein.*
150  **Item #4:** *The Defendant(s) physically stamped the words "DO NOT REDEPOSIT" on the copy of the*
151  *image after it was printed. The Defendant(s) had manually applied this stamp with the intent to*
152  *defraud the Plaintiff. Note: Item #4 does not appear in check numbers 14, 15 and 16.*
153  **Item #5:** *Erroneous data and symbols appear in IRD items that have been altered and fabricated.*
154  **Item #6:** *The data listed in this item is erroneous and was completely fabricated by the Defendant(s)*
155  *with the intent to defraud the Plaintiff. In order to comply with ANSI X9.100-140 the MICR line must*
156  *show the IRD for Qualified Return Notification "5", the Routing number for the BOFD, and the check*
157  *total.*
158  **Item #7:** *Lines 71 – 83 is incorporated by reference as though fully stated herein.*
159  **Item #8:** *The additional endorsements were manually placed into the image by the defendant(s). It is*
160  *clearly evident that the endorsement entries were completely fabricated by the Defendant(s) with the*
161  *intent to defraud the Plaintiff: 1. The entries do not conform with the ANSI X9.100-140 Specifications*
162  *for an Image Replacement Document (IRD); 2. The first endorsing bank item sequence number is*
163  *identical to the item sequence number listed in item #7. The item sequence number is an internal*
164  *number that identifies the item at the endorsing bank.*
165  **List of identical item sequence numbers for the same ICL file:**

| CHECK NUMBER | FIFTH THIRD BANK | FRB ATLANTA |
|:---:|:---:|:---:|
| 3 | 10033540 | 10033540 |
| 6 | 10033520 | 10033520 |
| 7 | 10033550 | 10033550 |
| 8 | 10033560 | 10033560 |
| 11 | 10033530 | 10033530 |
| 14 | 10172540 | 10172540 |
| 15 | 10172550 | 10172550 |
| 16 | 10172560 | 10172560 |

166
167  *Furthermore, the item sequence number is only 8 digits in length. As stated in Exhibit #16 the*
168  *Federal Reserve Bank's current <u>sequence number format is a fixed 10 digit sequence number.</u>*
169  **ITEM #9:** *Shows the date that the item was settled/paid by the Federal Reserve Bank of Atlanta. The*
170  *endorsement also contains a 10 digit sequence number.*
171  **PROBLEMS WITH CHECK NUMBER 4, 5, 9, 10, 12, 13, and 17**
172  **ITEM #1:** *Lines 24 – 31 are incorporated by reference as though fully stated herein.*

50

173 | 174 | 175 **Item #2:** *The bank indorsement information found in this area is erroneous and was completely fabricated by the Defendant(s) with the intent to defraud the Plaintiff. In accordance with ANSI X9.100-140 the endorsement data in this item must match the endorsement data listed in item #8.*

176 | 177 **Item #3:** *Lines 97 – 118 including Footnote #1 is incorporated by reference as though fully stated herein.*

178 | 179 **Item #4:** *The item is missing the MICR line showing the IRD for Qualified Return Notification "5", the Routing number for the BOFD, and the check total.*

180 | 181 | 182 | 183 | 184 **Items #5 and #7:** *The additional endorsements were manually placed into the image by the defendant(s). It is clearly evident that the endorsement entries were completely fabricated by the Defendant(s) with the intent to defraud the Plaintiff: 1. The entries do not conform with the ANSI X9.100-140 Specifications for an Image Replacement Document (IRD); 2. The endorsing bank item sequence number in each item are completely bogus.*

185 **List of bogus item sequence numbers:**

| CHECK NUMBER | FIFTH THIRD BANK | J.P. MORGAN BANK |
|---|---|---|
| 4 | 77777777777 | 9999999992000118 |
| 5 | 77777777777 | 999999992000123 |
| 9 | 77777777777 | 999999992000129 |
| 10 | 77777777777 | 999999992000119 |
| 12 | 77777777777 | 999999992000118 |
| 13 | 77777777777 | 999999992000110 |
| 17 | 77777777777 | 999999992000102 |

187 **ITEM #6:** *Shows that the Defendant(s) used multiple image date to create the IRD item.*

188 | 189 | 190 | 191 | 192 **ITEM #8:** *The bank indorsement information found in this area is erroneous and was completed fabricated by the Defendant(s) with the intent to defraud the Plaintiff. The routing number 074909962 used by J.P. Morgan Chase Bank N.A. is not listed as an endpoint on the 2013 FedForward Endpoint Tiers Listing (exhibit #17). Furthermore, lines 121 – 130 is incorporated by reference as though fully stated herein.*

193 | 194

51