







### NOTICE OF DEFAULT JUDGEMENT AND IRREVOCABLE ESTOPPEL BY ACQUIESCENCE

*In the matter between the:*

**Respondent(s):**

*FIFTH THIRD BANK, et al.*

*and*

**Declarant:**

*JAMES A WILLIAMS TRUST*

**Therefore, be it known to any and all concerned and affected parties that;**

This is a statement to the fact that I, James Williams, Owner/Beneficiary for the Fifth Third Bank accounts #7460552230 and #7460471248 in the name JAMES A WILLIAMS TRUST have allowed the above Respondant(s) 10 days to dispute, meet the simple demands specified on lines 462 – 472 or to make a counterclaim to any of the statements made in the **"A Special Action for Remedy Ex Necessitate Legis for Commercial Injury, Ultra Vires Acts, Criminal Conversion, Fraudulent Mis-representation"** and the accompanying exhibits 'A' – 'T'. The failure to dispute, meet the demands, or make any counterclaim has created an automatic default judgment and establishing permanent and irrevocable estoppel by acquiescence barring the Respondant(s) or their agents from interfering with the compensatory damages claimed and established. On June 07, 2013, or as soon thereafter, the Declarant will be filing a Motion for An Immediate Order for Relief in the United States District Court for the Northern District of Georgia, Atlanta Division. Total compensatory damages now due = **$946,000.00 USD.** The court may award punitive damages in an amount sufficient to punish and to make examples of the Respondent(s), and to deter the Respondent(s) and others from engaging in similar conduct.

P. Brian Moore, Vice President, Fifth Third Bank at 38 Fountain Square Plaza; Cincinnati, Ohio 45263; and Jermain Pettis, Vice President - Business Banking, Fifth Third Bank – Buckhead, Sovereign Building, 3344 Peachtree Rd. - Suite 800, Atlanta, GA 30326; had received the document **"A Special Action for Remedy Ex Necessitate Legis for Commercial Injury, Ultra Vires Acts, Criminal Conversion, Fraudulent Mis-representation"** and the accompanying exhibits 'A' – 'T'. by registered mail on or before May 20, 2013.

JAMES A WILLIAMS TRUST



By: _____

James Williams, Owner/Beneficiary

**Seal/**

*June 04, 2013*

# Invoice

**CHECKALT PAYMENT SOLUTIONS, INC.**

5670 WILSHIRE BLVD.
SUITE 1530
LOS ANGELES, CA 90036

| Date | Invoice # |
|------|-----------|
| 4/30/2013 | 3241 |

| Bill To |
|---------|
| James A. Williams |

**Percentage charges in the invoice below represent the image cash letters totaling $9000 that were created and deposited by CheckAlt. $9000 x 0.50 % (CheckAlt processing charge) = $45.00**

**Federal Reserve Bank proof of deposit can be found on pages 20, 21, 24, and 25 from exhibit #1**

| Quantity | Item Code | Description | Price Each | Amount |
|----------|-----------|-------------|------------|--------|
| 1 | Setup Fee | Setup Fee | 250.00 | 250.00 |
| 3 | James A. Williams | # of checks processed for Fifth Third Bank on behalf of James A. Williams Trust in period 4/1/13 - 4/30/13 | 0.75 | 2.25 |
| 1 | Percentage Charges | Percentage Charges | 45.00 | 45.00 |

**Total**     $297.25

**Customer Total Balance** $1,419.50

B83

CHECKALT PAYMENT SOLUTIONS, INC.

5670 WILSHIRE BLVD.
SUITE 1530
LOS ANGELES, CA 90036

# Invoice

| Date | Invoice # |
|------|-----------|
| 5/31/2013 | 3319 |

| Bill To |
|---------|
| James A. Williams |

**Percentage charges in the invoice below represent the image cash letters totaling $221,000 that were created and deposited by CheckAlt, $221,000 x 0.50 (CheckAlt processing charge)= $1105.00.**

**Federal Reserve Bank proof of deposit can be found on pages 31, 32, 37, 38 from exhibit #1 and exhibit #4**

| Quantity | Item Code | Description | Price Each | Amount |
|----------|-----------|-------------|------------|--------|
| 23 | James A. Williams | # of checks processed for Fifth Third Bank on behalf of James A. Williams Trust in period 5/1/13 - 5/31/13 | 0.75 | 17.25 |
| 1 | Percentage Charges | Percentage Charges | 1,105.00 | 1,105.00 |

| **Total** | $1,122.25 |
|-----------|-----------|

**Customer Total Balance** $1,419.50

B84

***ELECTRONIC CHECK EXCHANGE:***

At present, a check may be converted to an electronic image at different stages of the collection process.

### A. The Check Image Exchange Process

Currently there are two basic models used by banks to collect electronic check images in which **no** bank uses the paper check at any point in the collection process. Each of these models begins with a paper check that is issued to a payee. In the first model, the payee deposits the paper check with its bank for collection as a check. The payee's bank (the bank of first deposit), at some point prior to sending the check forward for collection or payment, images the check (i.e., captures an electronic picture of the front and back of the check). The electronic images, along with electronic images of other checks deposited with the same bank of first deposit and drawn on the same payor bank, are included in an electronic file. The electronic file is referred to as an image cash letter[1].

Also included in this file (although in a different file field) is the MICR line information associated with each of the imaged checks contained in the file. The bank of first deposit then sends the electronic file to the Federal Reserve Bank of Atlanta, ("FRB") which serves as a central distribution point for electronic files. The FRB then transmits the electronic file to the payor bank. This transmission does not occur over the ACH Network but rather over communication channels established specifically for check collection. The payor bank will process the checks primarily relying on the MICR line information contained in the electronic file and reviewing the electronic images only to the extent that its internal procedures so require[2]. If the payor bank decides to return one or more of the checks contained in the image cash letter, it will do so by creating a return image cash letter and sending it back to the bank of first deposit. The entire process from start to finish is completely automated[3].

In the second model, the electronic check images are created by the payee, and the electronic images, as opposed to the paper checks, are deposited by the payee in its bank and transmitted directly to the FRB. Under both image exchange models described above, the payor bank agrees to accept the transmission of an electronic image of an item as presentment.

### B. The Growth of Check Image Exchange

The recent growth of electronic image exchange was sparked by the enactment of the Check Clearing in the 21st Century Act ("Check 21 Act")[4]. Although it is commonly believed that the Check 21 Act authorizes

---

[1] ICL's contain two data types: images and textual information. The textual information is in the form of Records and Fields that describe in detail the check images and the information contained in the check images. There is an emerging industry standard, ANSI X9.37, that specifies exactly what information must be included in an image cash letter and where within the electronic file such information must be placed. *See* FED. RES. FIN. SERVS., FEDERAL RESERVE ADOPTION OF DSTU X9.37-2003 5 (2005), *available at* http://www.frbservices.org/Retail/pdf/X937FRBStandards Reference.pdf.

[2] Typically, a payor bank will set a dollar threshold which triggers a manual review of presented checks. The check images can also be used by the payor bank to create image statements for its customers or even to create a substitute check. See *infra* note 8 for a definition of substitute check.

[3] Processed without human intervention.

B85

the creation and use of electronic checks[5],it actually does not. A close reading of the law and its implementing regulation will not yield a single provision addressing the creation, storage or exchange of images[6]. Nevertheless, the Check 21 Act facilitates the use of electronics in the check collection system by establishing conditions under which a properly prepared paper copy of a check, referred to as a substitute check[7], will be considered the "legal equivalent" of the original paper check[8]. The ability to create a legal equivalent to the original paper check changes a fundamental principle of negotiable instrument law-that a negotiable instrument is a transferable obligation (separate from the underlying obligation for which it was issued) to pay that is reified in the particular piece of paper on which it is written. If a legal equivalent to the original check can be created, then there is no need to transport the original check through the check collection system. At any given point in the collection process or thereafter if it becomes necessary to produce "the check," the Check 21 Act permits the creation of a legal equivalent[9].

[Q] Can a substitute check be an electronic record? [A] No. By definition a substitute check must be a piece of paper. An electronic file is not a substitute check.

A number placed in Position 44 is called the External Processing Code (EPC). Position 44 is just to the left of the RT/ABA routing number, on the MICR line. Both Regulation CC and the X9.100-140 standard require certain values in the EPC field for processing substitute checks.

Whenever a substitute check is created, a "4" is always printed in the EPC field in the MICR line of the substitute check. ANSI X100-140 requires that a "4" be placed in the EPC position identifying a substitute check. On an original check, Position 44 generally is left blank for forward collection, however if there is a value in that position it will be replaced with a "4". When a substitute check is created to return the check to a depositor, the substitute check will have a "4" in the EPC field in the MICR line of the substitute check. All substitute checks must have a "4" in the EPC field.

---

[4] 12 U.S.C. §§ 5001-5018 (Supp. 2006). The Check 21 Act was enacted in October 2003 with an effective date of October 2004. *Id.* at § 5001.

[5] *See, e.g.*, Richard Burnett, *Banks Have Check 21-What About Consumers?*, ORLANDO SENTINEL (Fla.), Jan. 16, 2005, at HI (claiming Check 21 permits "banks to clear checks electronically by transferring mere digital copies of the checks"); P.J. Huffstutter, *Signed, Sealed, Delivered: 'Freight Dogs'Fly Bundles of Checks Worth Billions in a Nightly Race to Keep Banks Balanced, But Electronic Transfers Could Ground Them,* L.A. TIMES, Jan. 11, 2005, at Al (claiming Check 21 permits financial institutions to send digital copies of checks to one another over the Internet); Teresa Dixon Murray, *As Banks Go Paperless, Checks Rarely in the Mail,* PLAIN DEALER (Cleveland), Nov. 1, 2005, at C6 (claiming Check 21 grants "digital copies" of checks the same standing as originals).

[6] *See* 12 U.S.C. §§ 5001-5018; 12 C.F.R. §§ 229.1-60 (2006).

[7] A substitute check is a paper reproduction of an original check that-

(1) Contains an image of the front and back of the original check;

(2) Bears a MICR line that, except as provided under ANS X9.100-140 (unless the Board by rule or order determines that a different standard applies), contains all the information appearing on the MICR line of the original check at the time that the original check was issued and any additional information that was encoded on the original check's MICR line before an image of the original check was captured; (3) Conforms in paper stock, dimension, and otherwise with ANS X9.100-140   (unless the Board by rule or order determines that a different standard applies); and

(4) Is suitable for automated processing in the same manner as the original check. 12 C.F.R. § 229.2(aaa).

[8] 12 U.S.C. § 5003(b); 12 C.F.R. § 229.2(aaa). To be a legal equivalent, the substitute check must accurately represent all of the information on the front and back of the original check at the time the original check was truncated and bear the legend "This is a legal copy of your check. You can use it the same way you would use the original check." 12 U.S.C. § 5003(b).

[9] *See* 12 U.S.C. § 5003(b).

*ANSI X9.100-140 requires that a "5" be placed in the EPC position for qualified returns of substitute checks. In the return process, a "5" is placed on the qualified return strip, or perforated strip attached to a substitute check. Whether a returning bank creates the substitute check or the returning bank receives a substitute check through inclearings and returns that item, the "5" must be in position 44.*

**FEDERAL RESERVE BANK IMAGE CASH LETTER SERVICE:**

*A Reserve Bank captures certain Electronic Information obtained from each Eligible Item and then transmits or delivers the information to the Depository Institution in a PDF cash letter or in a PDF return cash letter that is in a format that is compatible with the Adobe Acrobat application ("PDF" format). The FRB transmits or delivers PDF cash letters and PDF return cash letters in accordance with their time schedule on each of their banking days that they receive an Eligible Item.*

*The Reserve Bank warrants that the Electronic Information, if properly printed by the Depository Institution, is sufficient to create a substitute check that meets all of the requirements of the Check 21 Act and its implementing regulation, subpart D of Regulation CC.*

*Because the Electronic Information related to an Eligible Item does not constitute an electronic item, the Reserve Bank does not make any of the warranties or indemnities provided in Regulation J with respect to an electronic item, including but not limited to a warranty that the Electronic Information conforms to any technical standard that applies to an electronic item.*

*When cash letters or image cash letters are deposited with Federal Reserve Banks, they credit the Federal Reserve account of the depositing institution or its correspondent. The Reserve Banks debit the Federal Reserve account of the paying institution or its correspondent when the checks drawn on the paying institution are presented to that institution for payment. A paying institution may choose to receive checks drawn on it in image files or in paper form. If the financial institution elects to receive check presentments in paper form, it will most likely receive substitute checks. The paying institution then charges the accounts of the customers who wrote the checks in accordance with its account agreement.*

B87

  


www.AllMyPapers.com

B88





## ICL Records

x9View © 2005 AllMyPapers, Inc. - [C:\Documents and Settings\Bill Lange\My Documents\Working Folder\AllMyPapers\Demos\X937 Files\F

File   Edit   Tools   About

| Index | Type |
|-------|------|
| 1 | 01 |
| 2 | 10 |
| 3 | 20 |
| 4 | 25 |
| 5 | 26 |
| 6 | 28 |
| 7 | 50 |
| 8 | 52 |
| 9 | 50 |
| 10 | 52 |
| 11 | 25 |
| 12 | 26 |
| 13 | 28 |
| 14 | 50 |
| 15 | 52 |
| 16 | 50 |
| 17 | 52 |
| 18 | 70 |
| 19 | 90 |
| 20 | 99 |

| Field | Description | Value |
|-------|-------------|-------|
| 1 | Record Type | "50" |
| 2 | Image Indicator | "1" |
| 3 | Image Creator Routing Number | "301171285" |
| 4 | Image Creator Date | "20040809" |
| 5 | Image View Format Indicator | "00" |
| 6 | Image View Compression Algorithm Ident... | "00" |
| 7 | Image View Data Size | "0005620" |
| 8 | View Side Indicator | "0" |
| 9 | View Descriptor | "00" |
| 10 | Digital Signature Indicator | "0" |
| 11 | Digital Signature Method | "00" |
| 12 | Security Key Size | "00000" |
| 13 | Start Of Protected Data | "0000000" |
| 14 | Length Of Protected Data | "0000000" |
| 15 | Image Recreate Indicator | "0" |
| 16 | User Field | "     " |
| 17 | Reserved | "     " |

Checks   Fields   Records

www.AllMyPapers.com

5/2/2006

18

B90

