# TABLE OF CONTENTS

**Table of Authorities** ............................................................................................... 1

**Introduction** ...........................................................................................................3

**Matters and Controlling Decisions Overlooked by Court** ...........................................4

  **A:** Response to order directing the Plaintiff to appear through counsel ........................4

  **B:** Peter Papoulias does not represent JAMES A WILLIAMS TRUST ......................10

  **C:** Response to order directing the Plaintiff to serve the summons and complaint
listed FIFTH THIRD BANK employees in their personal capacity ................................11

  **D:** Plaintiff has satisfied the requirements for service of process under Fed. Civ. R.
4(h)...............................................................................................................................14

  **E:** Proof of misrepresentations filed by counsel for the Defendant........................15

  **F:** The two court cases that Judge Evans used to support her order involve trusts that
are not sole-proprietorships.........................................................................................19

  **G:** The order issued by Judge Evans on November 26, 2013 is based on facts
inaccurately stated, fabricated and does not follow the controlling precedent............20

**CONCLUSION**............................................................................................................24

**Exhibit 21A:** Memorandum of Decision and Order from the court case *United Parcel
Service of America v. Net, Inc., 185 F. Supp. 2d 274 - Dist. Court, ED New York 2002*
issued by Judge Spatt on February 15, 2002..................................................................25

**Exhibit 21B:** Civil Cover Sheet....................................................................................32

**Exhibit 21C:** Copy of Summons, Proof of Service and Affidavit of Service.............33

**Exhibit 21D:** May 13, 2013 order issued by Senior Judge Hugh Lawson in the U.S.D.C.
for the Middle District of Georgia court case *LEE v. BANK OF AMERICA; GAMD, Civil
Action No. 7:13-CV-8 (HL)* and copies of the two summons issued for the case.........36

## Cases

*Bellis v. United States, 417U.S.85 (1974)*..............................................................................7

*Brandon v. Holt, 469 US 464 - Supreme Court 1985*......................................................14

*Bright v. Westmoreland County*............................................................................................22

*Carey v. Piphus, 435 U.S. 247 (1978*..................................................................................22

*Cleveland Board of Education v. Loudermill, 470 U.S. 532, 541 (1985)* .........................22

*Demos v. Landmark at Hillsboro Condo. Ass'n, Inc., 47 So. 3d 971, 972 (Fla. 4th DCA 2010)* ....................................................................................................................................19

*Docket No. 1:07-Cr-108 United States District Court, Northern District of Georgia Atlanta Division United States Of America v. Sherry Peel Jackson, August 29, 2007:..*7

*Durant v. Traditional Investments, Ltd., 88 CV 9048, 1990 WL 269854 (S.D.N.Y. April 25, 1990)* .........................................................................................................................5, 10

*Gribbel v. Henderson, 10 So. 2d 734, 739 (1942), aff'd 14 So. 2d 809 (1943)* ...............19

*Henderson v. Cherry, Bekaert & Holland, 932 F.2d 1410, 1412 (11th Cir. 1991)* .........18

*In Bright v. Westmoreland County*.......................................................................................22

*Kamper v. Hawkins, 3 Va. 19 (Va. 1793*............................................................................24

*Kraebel v. New York City Dep't of Housing Preservation and Development, 2002 WL 14364 *4, n. 5 (S.D.N.Y. Jan.3, 2002)* .........................................................................6, 11

*Lattanzio v. COMTA, supra, 481 F.3d at 140 (2007)*..........................................................6

*Lee v. Bank of America; GAMD, Civil Action No. 7:13-CV-8 (HL)* ................................17

*Lowery v. Hoffman, 188 F.R.D. 651, 653 (M.D. Ala. 1999)* ...............................................6

*Marbury v. Madison, 5 U.S. at 163* ....................................................................................22

*Marine Midland Bank v. Miller, 664 F.2d 899, 902 (2nd) Cir. 1981)*...............................15

*Monell v. New York Department of Social Services, 436 U. S. 658, 690 n. 55 (1978)*....14

*Moragne v. States Marine Lines, 398 U.S. 375, 403 (1970*...............................................22

*National Independent Theatre Exhibitors, Inc. v. Buena Vista Distribution Co., 748 F.2d 602, 610 (11th Cir. 1984)* ...................................................................................................6

*Pension Benefit Guaranty Corp. v. Viking Food Service, Inc., 1994 WL 702042 *1 (S.D.N.Y. Dec.14, 1994)*..................................................................................................6, 11

*People v. Zajic, 88 Ill.App.3d 477, 410 N.E.2d 626 (1980)* .............................................21

*Ruiz v. Commissioner of the D.O.T. of City of New York, 687 F.Supp. 888, 890 (S.D.N.Y.1988), modified on other grounds, 934 F.2d 450 (2d Cir.1991)*.......................5

*RZS Holdings AVV v. PDVSA Petroleo S.A., 506 F.3d 350, 354 n. 4 (4th Cir.2007)*........6

*Saktides v. Cooper, 742 F. Supp. 382, 385 (W.D. Tex. 1990)* ..........................................15

*Scott v. Atlanta Dairies Coop., 239 Ga. 721, 724, 238 S.E.2d 340, 343 (1977)* ............... 18

*Shrader v. CSX Transportation, Inc., 70 F.3d 255, 256-57 (2d Cir.1995)* ................. 5, 10

*Soerries v. Dancause, 248 Ga. App. 374, 375, 546 S.E.2d 356, 358 (2001)* .................... 13

*Stuart v. Spademan 772 F.2d at 1197, (5th Cir. 1985)* .................................................. 15

*Tumey v. Ohio, 273 U.S. 510, 523 (1927* .................................................................... 22

*United Parcel Service of America v. Net, Inc.185 F. Supp. 2d 274 - Dist. Court, ED New York, 2002* ...................................................................................................................... 6

*United States Court of Appeals for the Federal Circuit Case #12-5070, James Williams v. UNITED STATES* ................................................................................................................ 8

*United States Court of Federal Claim Case #1:10-cv-00753-VJW, JAMES A WILLIAMS TRUST v. UNITED STATES* ............................................................................................... 8

*United States v. Bajakajian, 524 U.S. 321, 338 (1998* ................................................... 22

*United States v. Doe, 465 US 605, 104 S. Ct. 1237, 79 L. Ed. 2d 552 - Supreme Court, 1984:* ........................................................................................................................... 7

*United States v. Fox, 721 F.2d 32, 36 (2d Cir. 1983)* .................................................... 6

*United States v. Hagerman, 545 F.3d 579, 581 (7th Cir. 2008) (citing cases from the Second and Fourth Circuits)* ............................................................................................ 6

*United States v. Montreal Trust Co., 358 F.2d 239, 243 (2d Cir.), cert. denied, 384 U.S. 919, 86 S.Ct. 1366, 16 L.Ed.2d 440 (1966)* ................................................................... 13

## Other Authorities

*1 E. Coke, Institutes of the Laws of England (1642)* ...................................................... 23

*Burger, What's Wrong With the Courts: The Chief Justice Speaks Out, U.S. News & World Report (vol. 69, No. 8, Aug. 24, 1970) 68, 71 (address to ABA meeting, Aug. 10, 1970)* ............................................................................................................................. 21

*The Federalist No. 78, at 470 (I. Kramnick ed. 1987) (A. Hamilton* ................................ 23

*Thomas Jefferson, Letter (to Edmund Pendleton), Aug. 26, 1776* ................................... 24

## Rules

*Fed. Civ. R. 4(h)* ............................................................................................................ 15

*Georgia Code - 9-11-4: Summons: (h)(4) Proof of service* ............................................. 16

## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF GEORGIA, ATLANTA DIVISION

JAMES A WILLIAMS TRUST
c/o Trustee PETER PAPOULIAS
4175 Breckenridge Court
Alpharetta, Georgia 30005
Tel:404-704-0898
peterpapoulias@hotmail.com

| | |
|---|---|
| JAMES A WILLIAMS TRUST ) | MEMORANDUM IN SUPPORT OF A |
| ) | MOTION FOR RECONSIDERATION |
| Plaintiff, ) | |
| ) | **Case Number: 1:13-CV-01956** |
| v. ) | |
| ) | JUDGE ORINDA D. EVANS |
| FIFTH THIRD BANK, et al; ) | |
| ) | December 02, 2013 |
| Defendant(s), ) | |
| ) | |

## MEMORANDUM IN SUPPORT OF A MOTION FOR RECONSIDERATION

COMES NOW Plaintiff JAMES A WILLIAMS TRUST and files this Memorandum in Support of its Motion for Reconsideration, which seeks to VACATE this Court's November 26, 2013 order (Doc. #19); and GRANT Plaintiffs' Motion for Summary Judgment (Doc. #16).

## INTRODUCTION

The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." ***Shrader v. CSX Transportation, Inc., 70 F.3d 255, 256-57 (2d Cir.1995)*** (citations omitted). The difficult burden imposed on the moving party has been established "in order to dissuade

3

repetitive arguments on issues that have already been considered fully by the Court." ***Ruiz v. Commissioner of the D.O.T. of City of New York, 687 F.Supp. 888, 890 (S.D.N.Y.1988), modified on other grounds, 934 F.2d 450 (2d Cir.1991)***. To grant such a motion means that a Court must find that it overlooked "matters or controlling decisions" which, if it had considered such issues, "would have mandated a different result." ***Durant v. Traditional Investments, Ltd., 88 CV 9048, 1990 WL 269854 (S.D.N.Y. April 25, 1990).***

A court has the inherent power to revisit earlier non-final decisions. This power is recognized in Federal Rule of Civil Procedure 54(b). The Tenth Circuit has held that a decided issue should be revisited only in extraordinary circumstances, including: "(1) when the evidence in a subsequent trial is substantially different; (2) when controlling authority has subsequently made a contrary decision of the law applicable to such issues; or (3) when the decision was clearly erroneous and would work a manifest injustice[1]."

In this case, the Order requiring Plaintiff to retain Counsel falls under the third of these extraordinary circumstances.

**MATTERS AND CONTROLLING DECISIONS OVERLOOKED BY COURT:**

**A: Response to order directing the Plaintiff to appear through counsel:**

**i)** The Plaintiff should not be required to retain counsel because JAMES A WILLIAMS TRUST is a sole proprietorship[2] solely owned by James Williams. As such, James Williams, as the sole owner of JAMES A WILLIAMS TRUST, can represent JAMES A WILLIAMS TRUST pro se in federal court.

The record shows that the Plaintiff had stipulated that JAMES A WILLIAMS TRUST is a sole proprietorship. Lines 42 – 80 from the Plaintiffs' 'Affidavit in Support

---

[1] ***Wessel v. City of Albuquerque, 463 F.3d 1138, 1143 (10th Cir. 2006).***
[2] The Plaintiff is not a corporation, partnership, or association.

60  of a Motion for Relief from an Order' filed on June 26, 2013 and lines 65 – 126 from the
61  Plaintiffs' 'Judicial Notice' is incorporated by reference as though fully stated herein.

62      See ***Kraebel v. New York City Dep't of Housing Preservation and Development,***
63  ***2002 WL 14364 *4, n. 5 (S.D.N.Y. Jan.3, 2002):*** "(holding that the plaintiff's pro se
64  status was acceptable because a sole proprietorship may be represented by its owner)"***;***
65  ***Pension Benefit Guaranty Corp. v. Viking Food Service, Inc., 1994 WL 702042 *1***
66  ***(S.D.N.Y. Dec.14, 1994):*** "(stating that sole proprietors are entitled to represent
67  themselves pro se)".

68  ***United Parcel Service of America v. Net, Inc.185 F. Supp. 2d 274 - Dist. Court, ED***
69  ***New York, 2002:*** ("the Court finds that The Net is a sole proprietorship solely owned by
70  Maydak. As such, Maydak, as the sole owner of The Net, can represent The Net pro se
71  in federal court").

72  ***United States v. Hagerman, 545 F.3d 579, 581 (7th Cir. 2008) (citing cases from the***
73  ***Second and Fourth Circuits);*** ("A sole proprietorship may litigate pro se, [citations
74  omitted], because it has no legal identity separate from the proprietor himself.")

75   ***Lowery v. Hoffman, 188 F.R.D. 651, 653 (M.D. Ala. 1999):*** ("An individual owner
76  may in general represent a sole proprietorship, for a sole proprietorship and its owner are
77  essentially one and the same.")

78  ***National Independent Theatre Exhibitors, Inc. v. Buena Vista Distribution Co., 748***
79  ***F.2d 602, 610 (11th Cir. 1984):*** ("As a sole proprietor, he could proceed *pro se* under
80  [28 USC]section 1654").

81  ***United States v. Fox, 721 F.2d 32, 36 (2d Cir. 1983):*** ("a sole proprietorship has no
82  legal existence apart from its owner").

83  ***RZS Holdings AVV v. PDVSA Petroleo S.A., 506 F.3d 350, 354 n. 4 (4th Cir.2007);***
84  ***Lattanzio v. COMTA, supra, 481 F.3d at 140 (2007):*** ("A sole proprietorship may
85  litigate pro se,").

***Bellis v. United States, 417U.S.85 (1974):*** ("the Court of Appeals reasoned that the owner of a sole proprietorship acts in a personal rather than a representative capacity").

***United States v. Doe, 465 US 605, 104 S. Ct. 1237, 79 L. Ed. 2d 552 - Supreme Court, 1984:*** ("the business records of a sole proprietorship are no different from the individual owner's personal records").

Transcript from Docket No. 1:07-Cr-108 United States District Court, Northern District of Georgia Atlanta Division United States Of America v. Sherry Peel Jackson, August 29, 2007:

Volume 1 Transcript of Jury Trial Before The Honorable Orinda D. Evans, United States District Judge: Page 32 Lines 13 – 19, Testimony of Deborah Fitzpatrick, Revenue Agent with Internal Revenue Service. Direct Examination by Richard Langway, Counsel for the Government:

"Q. After you completed the phase one training, individual tax Returns, you went on to business. Tell the members of the jury What you're talking about when you started to train on business tax returns?

A. Schedule C business type, a sole proprietor, you're not a Corporation,".

**i)     IRS Publication 1635 provides definitions for a sole proprietorship and a corporation:**

**Sole Proprietorship:** A sole proprietorship is an unincorporated business that is owned by one individual. It is the simplest form of business organization to start and maintain.

The business has no existence apart from you, the owner. Its liabilities are your personal liabilities and you undertake the risks of the business for all assets owned, whether or not used in the business. Include the income and expenses of the business on your own tax return.

**Corporation:** A corporation is defined as a legal entity or structure created under the authority of the laws of a state consisting of a person, or group of persons, who become

112   shareholders. The entity's existence is considered separate and distinct from that of its

113   members. Since a corporation is an entity in its own right, it is liable for its own debts

114   and obligations. In forming a corporation, prospective shareholders transfer money,

115   property, or both, for the corporation's capital stock.

116        In Document #18 the Plaintiff provided evidence[3] showing that the U.S. Court of

117   Claims[4] and U.S. Court of Appeals for the Federal Circuit[5] agree that JAMES A

118   WILLIAMS TRUST is a sole proprietorship and as such there is no legal distinction

119   between James Williams (owner) and JAMES A WILLIAMS TRUST (business trust).

120   Both the U.S. Court of Federal Claims and the U.S. Court of Appeals for the Federal

121   Circuit have allowed James Williams to file paperwork on behalf of JAMES A

122   WILLIAMS TRUST. Lines 42 -74 from the Plaintiffs' 'Response to Defendant's Reply

123   In Support of a Motion To Dismiss' (Doc.#18) filed on November 21, 2013.

124        The Plaintiff has also attached the Memorandum of Decision and Order from the

125   court case ***United Parcel Service of America v. Net, Inc., 185 F. Supp. 2d 274 - Dist.***

126   ***Court, ED New York 2002*** issued by Judge Spatt on February 15, 2002 **(See attached**

127   **Exhibit 21A).**

128   **Brief Summary of Order:**

129        **[QUOTE]** On March 26, 2001, the Court received a "Notice of Appearance for

130   The Net, Inc., and John Doe 1." The notice states, "Defendant The Net, Inc., by and

131   through it sole proprietor, Keith Maydak, sued as John Doe I, pro se, notifies the Court

132   and the parties that they appear specially in this action as defendants to challenge

133   sufficiency of service and personal jurisdiction." The notice also sets forth the

134   defendants' address as 500 Lincoln Highway, N. Versailles, PA 15137. In addition to the

---

[3] Exhibit A: 'ORDER TO SHOW CAUSE' issued by Judge Wolski on 01/25/2011; Exhibit B: 'DECLARATION of James Williams' filed on 01/31/2011; Exhibit C: 'ORDER LIFTING THE STAY ISSUED IN THE ORDER TO SHOW CAUSE' issued by Judge Wolski on 02/09/2011

[4] United States Court of Federal Claim Case #1:10-cv-00753-VJW, JAMES A WILLIAMS TRUST v. UNITED STATES.(Case initiated in November of 2010)

[5] United States Court of Appeals for the Federal Circuit Case #12-5070, James Williams v. UNITED STATES. (Case is still pending).

135  Notice of Appearance, the Court received a motion from Maydak to strike the default
136  that had been entered against The Net.

137      In an order dated April 16, 2001, the Court denied Maydak's motion to strike the
138  default that had been entered against The Net. The Court stated that Maydak had filed
139  the motion on behalf of The Net. However, Maydak is not an attorney and, therefore, is
140  precluded from representing a corporation, partnership, or association, such as The Net.
141  Accordingly, the Court denied Maydak's motion to strike the default without prejudice
142  and with leave to renew upon retaining counsel to represent The Net. The Court also
143  ordered that, in light of the fact that The Net filed papers indicating its willingness to
144  defend this action, the plaintiff's motion for the entry of a default judgment would be
145  held in abeyance for 30 days so that The Net could retain counsel.

146      The Court further ordered that if after 30 days, The Net failed to establish that it
147  had retained counsel, the Court would enter a default judgment against The Net.

148      On May 18, 2001, the Court received four undated motions from Maydak: (1) a
149  motion by The Net, Inc., by and through its sole proprietor, Maydak, for reconsideration
150  of the April 16, 2001 order of the Court directing The Net to appear through counsel; (2)
151  a motion by Maydak to compel service of the complaint on him as the real party in
152  interest; (3) Maydak's motion for leave to intervene as a defendant in the case; and (4)
153  Maydak's motion to dismiss the complaint as moot, because the domain name, "ups.net"
154  is no longer registered to The Net, Inc.

**A. The Motion for Reconsideration**

156      Maydak moves for reconsideration of the Court's April 16, 2001 order directing
157  The Net to retain counsel, denying his motion to vacate the default, and holding in
158  abeyance the plaintiff's motion for a default judgment. Maydak asserts that The Net
159  should not be required to retain counsel because it is a sole proprietorship, not a
160  corporation, partnership, or association. He claims that he is the sole owner of The Net,
161  which exists only as his alter ego. He states that "no corporation papers [have been

8

filed], no partnership papers produced, nor any formation papers of an association." Maydak also states that he is the real party in interest and has not been served with a copy of the summons and complaint in this case. For these reasons, Maydak requests that the Court reconsider the order directing The Net to obtain counsel.

UPS argues that the Court should reject Maydak's motion for reconsideration, because it was not timely filed. Motions for reargument are governed by Rule 6.3 of the Local Rules of the United States Courts for the Southern and Eastern Districts of New York. Local Rule 6.3 provides as follows:

A notice of motion for reargument shall be served within ten (10) days after the docketing of the court's determination of the original motion. There shall be served with the notice of motion a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked. No oral argument shall be heard unless the court grants the motion and specifically directs that the matter shall be reargued orally. No affidavits shall be filed by any party unless directed by the court.

The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked— matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." ***Shrader v. CSX Transportation, Inc., 70 F.3d 255, 256-57 (2d Cir.1995)*** (citations omitted). The difficult burden imposed on the moving party has been established "in order to dissuade repetitive arguments on issues that have already been considered fully by the Court." ***Ruiz v. Commissioner of the D.O.T. of City of New York, 687 F.Supp. 888, 890 (S.D.N.Y.1988), modified on other grounds, 934 F.2d 450 (2d Cir.1991)***. To grant such a motion means that a Court must find that it overlooked "matters or controlling decisions" which, if it had considered such issues, "would have mandated a different result." ***Durant v. Traditional Investments, Ltd., 88 CV 9048, 1990 WL 269854 (S.D.N.Y. April 25, 1990)***

It appears that Maydak argues that the Court overlooked his allegation that The Net is not a corporation, partnership, or association when denied Maydak's motion to vacate the default and directed The Net to retain counsel. Among the papers the Court considered when it entered the April 16, 2001 was Maydak's March 13, 2001 letter, in which he states that he is the proprietor of The Net and is willing to accept service on behalf of The Net.

Although UPS named the defendant as "The Net, Inc.", it does not dispute Maydak's claim he is the sole owner and proprietor of The Net. Thus, based on Maydak's assertion and the absence of an objection by UPS, the Court finds that The Net is a sole proprietorship solely owned by Maydak. As such, Maydak, as the sole owner of The Net, can represent The Net pro se in federal court. ***See Kraebel v. New York City Dep't of Housing Preservation and Development, 2002 WL 14364 *4, n. 5 (S.D.N.Y. Jan.3, 2002)*** (holding that the plaintiff's pro se status was acceptable because a sole proprietorship may be represented by its owner); ***Pension Benefit Guaranty Corp. v. Viking Food Service, Inc., 1994 WL 702042 *1 (S.D.N.Y. Dec.14, 1994)*** (stating that sole proprietors are entitled to represent themselves pro se). The Court notes that if, during the course of the litigation, it becomes clear that The Net is a corporation, partnership or association, or has taken on an existence separate from Maydak, The Net will be required to retain counsel. However, it appearing that The Net is as sole proprietorship, Maydak's motion for reconsideration is granted, and the Court's April 16, 2001 order is vacated. **[End Quote]**

**B: Peter Papoulias does not represent JAMES A WILLIAMS TRUST.** Peter Papoulias is merely an agent of service for filing paperwork on request by the Plaintiff. All pleadings and affidavits filed by the Plaintiff have been signed by the Real Party in Interest, James Williams. The only paperwork that Peter Papoulias signed was the Certificates of Service.

216  **C: Response to order directing the Plaintiff to serve the summons and complaint**
217  **listed FIFTH THIRD BANK employees in their personal capacity:**

218  The Plaintiffs' complaint[6] filed on June 12, 2013 clearly identifies FIFTH THIRD
219  BANK, et al. as the Defendant in this matter. Lines 58 – 61 from the Plaintiffs'
220  complaint states: "*Defendant FIFTH THIRD BANK, et al. is a U.S. regional banking*
221  *corporation, headquartered at 38 Fountain Square Plaza, Cincinnati, OH 45263. The*
222  *commercial office involved in this action is located at the following address: FIFTH*
223  *THIRD BANK – Buckhead Sovereign Building; 3344 Peachtree Road. Suite 800;*
224  *Atlanta, Georgia, 30326; Phone: 404-279-4567".*

225  In the introduction section of the complaint the Plaintiff had listed the FIFTH
226  THIRD BANK employees who were involved in causing the injury to the Plaintiff. The
227  Plaintiff did not list the employees in their individual capacity. Line 33 from the
228  Plaintiffs' complaint states: "*The Defendant's representatives P. Brian Moore, Jermain*
229  *L. Pettis, Kimberly R. Love, Troy Smith, Adam Hipple and DaQuita Irons acting in the*
230  *course and scope of their employment at FIFTH THIRD BANK through their acts and*
231  *omissions knowingly, consciously, wrongly, without compensation and without due*
232  *process of law have effected a taking of property from the Plaintiff."*

233  The caption found on Plaintiffs' complaint filed on June 12, 2013 also correctly
234  identifies the Defendant, FIFTH THIRD BANK, et al. in this matter:

235  JAMES A WILLIAMS TRUST

236  Plaintiff,

237  v.

238  FIFTH THIRD BANK, et al; and

239  John and Jane Does 1 - 99

240  Defendant(s),

---

[6] Civil cover sheet also lists FIFTH THIRD BANK, et al. as the Defendant in this matter

11

241   When entering the case into the record the Clerk of the Court had inadvertently
242   changed the caption of the case. The clerk added FIFTH THIRD BANK employees P.
243   Brian Moore, Jermain L. Pettis, Kimberly R. Love, Troy Smith, Adam Hipple and
244   DaQuita Irons in their **"representative capacity"**.  The top of the Civil Cover Sheet
245   states: "This form is required for the use of the Clerk of Court for the purpose of
246   initiating the civil docket record." **(See attached Exhibit 21B).**

247   Since FIFTH THIRD BANK, et al is the only party listed as the Defendant on the
248   Civil Cover Sheet the Plaintiff is dumbfounded as to why the Clerk of Court joined[7] the
249   above listed employees as Defendant's in this matter.

250   Furthermore the Plaintiffs' claim for damages is against FIFTH THIRD BANK, et
251   al. only. Nowhere in the complaint does the Plaintiff seek damages from any employees
252   either in their representative capacity[8] or personal capacity.

253   The order (Doc. #19) directing the Plaintiff to serve the summons and complaint
254   to the above listed FIFTH THIRD BANK employees in their personal capacity is moot.
255   Individuals acting in a representative capacity and who have not pierced the corporate
256   veil cannot be sued. F.R.C.P. Rule 17(b) Capacity to Sue or Be Sued. Capacity to sue or
257   be sued is determined as follows:

258   **(1) For an individual who is not acting in a representative capacity, by the law of**
259   **the individual's domicile;**

260   See ***Marine Midland Bank, NA v. Miller, 664 F. 2d 899 - Court of Appeals, 2nd***
261   ***Circuit 1981***: ("In construing these provisions, the district court distinguished between
262   activities undertaken by a person in his individual capacity and those undertaken in his
263   role as a corporate employee, and applied what has come to be known as the **"fiduciary**
264   **shield"** doctrine, *see, e. g., **United States v. Montreal Trust Co.**, 358 F.2d 239, 243 (2d*
265   **Cir.), *cert. denied*, 384 U.S. 919, 86 S.Ct. 1366, 16 L.Ed.2d 440 (1966)**, which holds

---

[7] Clerk of Court joined listed employees with a court order or without a request from the Plaintiff.
[8] Plaintiffs' claim does not state that any of the FIFTH THIRD BANK employees had 'pierced the corporate veil'. ***Soerries v. Dancause, 248 Ga. App. 374, 375, 546 S.E.2d 356, 358 (2001)***

266  that acts performed by a person in his capacity as a corporate fiduciary may not form the

267  predicate for the exercise of jurisdiction over him in his individual capacity. 512 F.Supp.

268  at 604. On the basis of the affidavits and other documentary evidence presented on the

269  motion, the court concluded that Miller's acts in New York had been performed only in

270  his capacity as president of Miller & Associates.

271  It found that Miller had prepared the Miller Report not alone, but rather with five

272  associates; that, in his oral presentation to Marine Midland, Miller merely repeated what

273  was already contained in the report; that the payments for the report had been made not

274  to Miller personally but to Miller & Associates; and that Miller had received no benefits

275  other than his salary as a member of the corporation. The court thus ruled that Miller

276  was protected by the fiduciary shield. The court rejected Marine Midland's argument that

277  Miller was personally subject to the court's jurisdiction because Miller & Associates was

278  merely a shell and Miller's acts had in fact been performed in his own behalf and thus in

279  his individual capacity. Treating this contention as a request to disregard the corporate

280  entity, the court found that Marine Midland had not made a showing sufficient to meet

281  New York's demanding standard for piercing the corporate veil. *Id.").*

282  ***Brandon v. Holt, 469 US 464 - Supreme Court 1985:*** ("[O]fficial capacity suits

283  generally represent an action against an entity of which an officer is an agent. . . .

284  ***Monell v. New York Department of Social Services, 436 U. S. 658, 690 n. 55 (1978).***

285  "Proper application of this principle in damages actions against public officials requires

286  careful adherence to the distinction between personal- and official-capacity suits.

287  Because this distinction apparently continues to confuse lawyers and confound lower

288  courts, we attempt to define it more clearly through concrete examples of the practical

289  and doctrinal differences between personal- and official-capacity actions.

290  Personal-capacity suits seek to impose personal liability upon a government

291  official for actions he takes under color of state law. ***See, e. g., Scheuer v. Rhodes, 416***

292  ***U. S. 232, 237-238 (1974).*** Official-capacity suits, in contrast, "generally represent only

13

293   another way of pleading an action against an entity of which an officer is an agent."
294   ***Monell v. New York City Dept. of Social Services, 436 U. S. 658, 690, n. 55 166\*166***
295   ***(1978)***. As long as the government entity receives notice and an opportunity to respond,
296   an official-capacity suit is, in all respects other than name, to be treated as a suit against
297   the entity. ***Brandon, 469 U. S., at 471-472***. It is not a suit against the official personally,
298   for the **real party in interest** is the entity. Thus, while an award of damages against an
299   official in his personal capacity can be executed only against the official's personal
300   assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit
301   must look to the government entity itself."

302        In ***Stuart v. Spademan  772 F.2d at 1197, (5th Cir. 1985)***, the Fifth Circuit
303   recognized that the fiduciary shield doctrine prohibits the exercise of personal
304   jurisdiction over an individual whose transaction of business in the forum occurred
305   solely as a corporate officer. See also ***Saktides v. Cooper, 742 F. Supp. 382, 385 (W.D.***
306   ***Tex. 1990)***.The fiduciary shield doctrine rests upon the sound determination that it
307   would be unjust to require a defendant to defend a suit in a forum where "'his only
308   relevant contacts are acts performed not for his own benefit but for the benefit of his
309   employer.'" ***Saktides v. Cooper, 742 F. Supp. at 385, citing Marine Midland Bank v.***
310   ***Miller, 664 F.2d 899, 902 (2nd) Cir. 1981).***

311   **D.     Defendant was properly served in this case. Plaintiff has satisfied the**
312   **requirements for service of process under Fed. Civ. R. 4(h):** Plaintiffs' Complaint
313   filed on June 12, 2013, Affidavit of Service and Proof of Service filed on September 25,
314   2013 and the Judicial Notice filed on October 03, 2013 is incorporated by reference as
315   though fully stated herein.

316        As stated in the Plaintiffs' Proof of Service and Affidavit of Service, process server
317   Josh Swanson, Phoenix Legal Inc. served the summons and complaint on September 24,
318   2013 at 11:00 am to ALISHA SMITH, CORPORATION SERVICE COMPANY, 40
319   Technology Parkway South Suite 300, Norcross, Georgia, 30092 who is designated by

320  law to accept service of process on behalf of the Defendant, FIFTH THIRD BANK. As
321  stated on the Georgia Secretary of State website, CORPORATION SERVICE
322  COMPANY is listed as the registered agent for FIFTH THIRD BANK.

323  https://cgov.sos.state.ga.us/Account.aspx/ViewEntityData?entityId=136502

324  Counsel's statement that Fifth Third Bank was not named as the Defendant on the
325  July 01, 2013 summons is erroneous, scandalous and vexatious. The information found
326  on the Summons, Proof of Service and Affidavit of Service contradicts the Defendant's
327  statements found in the Opposing Motions and Responses[9] filed by the Defendant in this
328  matter.

329  **E.   Proof of the misrepresentations filed by Counsel for the Defendant: See item**
330  **numbers found on the attached Exhibit 21C:**

331  **ITEM #1:** The summons issued by the Clerk of the Court on July 01, 2013 clearly
332  identifies FIFTH THIRD BANK, et al. as the Defendant in this matter.

333  **ITEM #2:** The name and address of a party that the Process Server can use to effect
334  service of process in accordance with F.R.C.P. Rule 4(h)(1) on the Defendant
335  Corporation FIFTH THIRD BANK, et al. The party that receives the summons and
336  complaint is simply being used to effect proper service on the Defendant Corporation,
337  FIFTH THIRD BANK, et al. The party does not become a Defendant in the case!

338  **ITEM #3:** Provides the court with the proof that on September 24, 2013 at 11:00am the
339  Process Server, Josh Swanson served the summons on ALISHA SMITH, who is
340  designated by law to accept service of process on behalf of the corporation FIFTH
341  THIRD BANK, et.al.

342  **ITEM #4:** In accordance with F.R.C.P. Rule 4(l) the process server[10] must file an
343  Affidavit of Service.

---

[9] See Document #14 and #17.
[10] Since Process Server, Josh Swanson is not a United States Marshal the server must file an Affidavit of Service.

15

344　　　　The Affidavit of Service states that *"Josh Swanson, being duly sworn, deposes*
345　*ans says that deponent is not a party to this action, is over 18 and resides in the State of*
346　*Georgia [and] that on 09/24/2013 at 11:00 A.M., at 40 TECHNOLOGY PKWY SOUTH*
347　*300, Norcross, G.A. 30092, Deponent served within Summons and Complaint,*
348　*Certificate of Interested Parties, Complaint and Memorandum in Support of an*
349　*Immediate Order for Relief, Civil Cover Sheet, Exhibits, on FIFTH THIRD BANK, a*
350　*corporation by delivering thereat a true copy of each to Alisha Smith personally,*
351　*deponent knew said corporation so served to be the corporation described in legal*
352　*papers and knew said individual to be thereof."*

353　　　　Furthermore, The Declaration of Jermaine L. Pettis (Doc. #14) demonstrates the
354　validity of service of process in this case. Vice-President of Business Banking for FIFTH
355　THIRD BANK provides the court with acknowledgment that he received the complaint
356　in "late of June, 2013**":** Defendant admits that they had received the Plaintiffs'
357　complaint in late of June 2013 (see Exhibit A, "Declaration of Jermaine L. Pettis" filed
358　by the Defendant on October 15, 2013).

359　　　　In the Declaration Jermaine L. Pettis states that he is the vice-president for
360　Business Banking for FIFTH THIRD BANK and that he had received the Plaintiffs'
361　summons and complaint in late of June, 2013. Jermaine L. Pettis also confirms that on
362　September 24, 2013, CORPORATION SERVICE COMPANY who the registered agent
363　for FIFTH THIRD BANK, also received the summons and complaint. As stated in the
364　Plaintiffs' Judicial Notice, the summons and complaint were delivered to the Defendant
365　on July 03, 2013 by U.S.P.S. Priority Overnight Mail.

366　　　　Proof of delivery can be validated by the tracking number 420 30326 9405 5036
367　9930 0483 0178 53 designated by U.S.P.S.

368　　　　***Georgia Code - 9-11-4:*** *Summons: (h) (4)* Proof of service: (4) **The written**
369　**admission or acknowledgment of service by the defendant.**

16

370  Service shall be made by delivering a copy of the summons attached to a copy of
371  the complaint as follows:

372  If the action is against a corporation incorporated or domesticated under the laws
373  of this state or a foreign corporation authorized to transact business in this state, to the
374  president or other officer of the corporation, secretary, cashier, managing agent, or other
375  agent thereof, provided that when for any reason service cannot be had in such manner,
376  the Secretary of State shall be an agent of such corporation upon whom any process,
377  notice, or demand may be served.

378  As a vice president, Jermaine L. Pettis can reasonably be expected to provide
379  notice to the corporation of the process that was served upon him.

380  For case law supporting the Plaintiffs' claim that service of process on the
381  Defendant FIFTH THIRD BANK, et al. had occurred on July 03, 2013, and on
382  September 24, 2013,  the Plaintiff has attached the May 13, 2013 order[11] issued by
383  Senior Judge Hugh Lawson in the U.S.D.C. for the Middle District of Georgia court case
384  ***LEE v. BANK OF AMERICA; GAMD, Civil Action No. 7:13-CV-8 (HL):***

385  **[Quote]** Defendant Bank of America removed the case to this Court on
386  January 18, 2013, and has moved to dismiss the complaint for insufficient service of
387  process and failure to state a claim.

388  The Court must first address Defendant's Rule 12(b) (5) motion to dismiss for
389  insufficient service of process, as without service, the Court lacks jurisdiction over the
390  defendant. A summons and the complaint were served by a Thomas County Deputy on
391  December 19, 2012 on Elizabeth Riddle, a vice president at a Bank of America branch
392  office in Thomasville. Defendant contends that this service does not comport with the
393  requirements of Rule 4. "After removal the sufficiency of service of process is
394  determined according to federal law." Id. at 696 (citing 28 U.S.C. § 1448). Rule 4(h) (1),
395  which governs service on a corporation provides:

---

[11] The Plaintiff has also attached the two summons that were filed in this case. See attached Exhibit 21D.

17

Unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served: (1) in a judicial district of the United States: (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and -- if the agent is one authorized by statute and the statute so requires -- by also mailing a copy of each to the defendant.

Fed.R.Civ.P. 4(h) (1): Under Rule 4(h), service upon a corporation may be effected in accordance with state law. *See* Fed.R.Civ.P. 4(e) (1). In Georgia, service upon corporations is governed by O.C.G.A. § 9-11-4(e) (1), which requires personal service on "the president or other officer of the corporation, secretary, cashier, managing agent, or other agent thereof. . . ." O.C.G.A. § 9-11-4(e) (1). The standard for who qualifies as an "agent" under the statute is not high. ***Henderson v. Cherry, Bekaert & Holland, 932 F.2d 1410, 1412 (11th Cir. 1991).*** As the Supreme Court of Georgia has recognized, "the object of service of process is to transmit notice of suit to the corporation." ***Scott v. Atlanta Dairies Coop., 239 Ga. 721, 724, 238 S.E.2d 340, 343 (1977)***. Therefore, service "must be made on an agent whose position is such as to afford reasonable assurance that he will inform his corporate principal that such process has been served upon him." Id.

As noted above, a summons and the complaint were served on Elizabeth Riddle, a vice president at a branch office of the bank in Thomasville. As a vice president, Riddle can reasonably be expected to provide notice to the corporation of the process that was served upon her. In addition, it is undisputed that Defendant learned of the lawsuit and was able to respond in a timely manner.

The Court therefore finds that the process and service of process was proper in this case. **[End Quote]**

On December 19, 2012 the summons and the complaint were served on Elizabeth Riddle, a vice president at a branch office of the bank in Thomasville. See 'Name and party to be served' on the attached summons.

**NOTE:** The summons and complaint were served upon Elizabeth Riddle to simply effect service of process on the Defendant, BANK OF AMERICA. Nowhere in the case documentation does it stipulate that Elizabeth Riddle in either her personal or representative capacity is a Defendant in this matter.

On June 07, 2013 the summons and the amended complaint were served on CT Corporation who is designated by law to accept service of process on behalf of the Defendant, BANK OF AMERICA.

**NOTE:** The summons and complaint were served upon CT Corporation to simply effect service of process on the Defendant, BANK OF AMERICA. Nowhere in the case documentation does it stipulate that CT Corporation is a Defendant in this matter.

The purpose of process is to provide notice to the defendant (and to other interested persons) and warn him or her that the plaintiff has begun a judicial action or proceeding. This notice/warning ensures that the defendant will appear at the specified time and place to defend the action and protect his or her interests. Therefore, process is used both to inform the defendant and to vest jurisdiction over the person or the property in the court. *See **Gribbel v. Henderson, 10 So. 2d 734, 739 (1942), aff'd 14 So. 2d 809 (1943).***

Furthermore, an alias on a summons is "immaterial to the validity of service or the return" where the summons also includes the served-person's correct name and an alias. ***Demos v. Landmark at Hillsboro Condo. Ass'n, Inc., 47 So. 3d 971, 972 (Fla. 4th DCA 2010).***

**F.     The two court cases that Judge Evans used to support her order involve trusts that are not sole-proprietorships. *Palazzo v. Gulf Oil Corp., 764 F.2d 1381, 1385,* and *In re Darren Buckner Living Trust, No. 12-70036-MHM, 2012,* state that a**

19

453 corporation may appear in the federal courts only through licensed counsel. As the
454 courts have recognized, the rationale for that rule applies equally to all artificial entities.
455 Thus, save a few aberrant cases, the lower courts have uniformly held that 28 U.S.C. §
456 1654, providing that "parties may plead and conduct their own cases personally or by
457 counsel," does not allow corporations, partnerships, or associations to appear in federal
458 court otherwise than through a licensed attorney. <u>Notably, it has been recognized that a</u>
459 <u>sole proprietorship has no legal existence apart from its owner, and that an individual</u>
460 <u>owner may represent his sole proprietorship in a pro se capacity.</u>

461 **G.    The order issued by Judge Evans on November 26, 2013 is based on facts**
462 **inaccurately stated, fabricated and does not follow the controlling precedent**.

463 It is not unusual for a judge's law clerk to write these opinions. In a publication
464 by St. Thomas University School of Law, attorney Edward Pfister now a lawyer in
465 private practice, boasted that his experience as a law clerk prepared him for the rigors of
466 commercial litigation. He noted that "writing opinions for Judge Faye [then a judge of
467 the 11th Circuit] and court orders for Judge Nesbitt [then a judge of the U.S. District
468 Court in Miami, Florida] honed my writing skills". He also stated that he reviewed
469 motion papers for a motion to dismiss, and was able to draft an order on a motion for
470 summary judgment. Most certainly this should be heartwarming to the some 80% of
471 petitioners whose appeals are marked unpublished and to the parties whose cases are
472 dismissed, after spending substantial sums on litigation, that law clerks fresh out of law
473 school are "honing their skills" on them. So, this sort of makes obvious why these
474 opinions go unpublished.

475 The Committee for the Rule of Law brings to light that Federal Courts across
476 America have become judicial assembly lines dispensing inconsistent product with their
477 unpublished decisions obviously without significant involvement of any authorized
478 justice. The Committee maintains that these decisions encourage expedient, not careful
479 consideration as the basis for judgment and constitutes an invitation to error,

incompetence, corruption and tyranny. The Committee for the Rule of Law was organized by a group of concerned lawyers, academics, jurists, and other citizens.

A judge cannot interfere with, tamper with, or in any way modify testimony without rendering incredible the truth seeking process to his sacred profession and destroying the fabric of his own occupation, thereby committing professional suicide. Any judge who tampers with testimony, deposition, or affidavit is a threat to the commercial peace and dignity of the State and of the American Continent, is in violation of the charters of the United Nations and the Supreme Law of the Land, is acting in the nature of a foreign enemy, and is justifiably subject to the penalties of treason.

A judge is an officer of the court, as well as are all attorneys. A state judge is a state judicial officer, paid by the State to act impartially and lawfully. A federal judge is a federal judicial officer, paid by the federal government to act impartially and lawfully. State and federal attorneys fall into the same general category and must meet the same requirements. A judge is not the court. ***People v. Zajic, 88 Ill.App.3d 477, 410 N.E.2d 626 (1980)***

"I know no safe depository of the ultimate powers of the society but the people themselves; and if we think them not enlightened enough to exercise their control with a wholesome discretion, the remedy is not to take it from them, but to inform (them)" – *Thomas Jefferson*

As Chief Justice Burger has noted: "A sense of confidence in the courts is essential to maintain the fabric of ordered liberty for a free people and three things could destroy that confidence and do incalculable damage to society: that people come to believe that inefficiency and delay will drain even a just judgment of its value; that people who have long been exploited in the smaller transactions of daily life come to believe that courts cannot vindicate their legal rights from fraud and over-reaching; that people come to believe the law - in the larger sense - cannot fulfill its primary function to protect them and their families in their homes, at their work, and on the public

507 | 508 | 509 streets." ***Burger, What's Wrong With the Courts: The Chief Justice Speaks Out, U.S. News & World Report (vol. 69, No. 8, Aug. 24, 1970) 68, 71 (address to ABA meeting, Aug. 10, 1970).***

510 | 511 | 512 | 513 | 514 | 515 | 516 | 517 In regards to the term 'ghostwriting' the Third U.S. Circuit Court of Appeals criticized this saying that Federal judges must write their own opinions and cannot simply sign an opinion that was "ghostwritten" by lawyers. ***In Bright v. Westmoreland County***, a unanimous three-judge panel issued a stiff rebuke to U.S. District Judge Arthur J. Schwab of the Western District of Pennsylvania after concluding that defense lawyers had submitted a "proposed opinion" and that Schwab adopted it "nearly verbatim" as his own. "When a court adopts a party's proposed opinion as its own, the court vitiates the vital purposes served by judicial opinions.

518 Where rights begin, discretion ends.

519 | 520 | 521 | 522 | 523 | 524 | 525 | 526 | 527 Over the years, this Court has consistently recognized that federal litigants have certain rights, such as that to "equality before the law," ***United States v. Bajakajian, 524 U.S. 321, 338 (1998)***, to procedural due process, ***Carey v. Piphus, 435 U.S. 247 (1978)***, to have grievances heard by a fair and independent tribunal, ***Tumey v. Ohio, 273 U.S. 510, 523 (1927)***, and to rely on pronouncements of this and other courts as authoritative expositions of what "the law" is. ***Moragne v. States Marine Lines, 398 U.S. 375, 403 (1970)***. These rights are all "conferred, not by legislative grace, but by constitutional guarantee." ***Cleveland Board of Education v. Loudermill, 470 U.S. 532, 541 (1985) (internal quotation omitted)***.

528 | 529 | 530 | 531 | 532 | 533 `A right cannot exist in the absence of an effective remedy for its breach. Therefore, if we are to have a right, the government has a duty to provide a corresponding remedy. Chief Justice Marshall writes: The Government of the United States has been emphatically termed a government of laws, and not of men. It will certainly cease to deserve this high appellation if the laws furnish no remedy for the violation of a vested legal right. ***Marbury v. Madison, 5 U.S. at 163***. Thomas Jefferson

534 observed that a constitution is supposed to provide remedies for all injuries accruing
535 from unlawful invasions of rights, so the people are never required to resort to a
536 rebellion in order to secure them.

537    Justice Kagan summarized the problem this action strives to address: Federal
538 inferior court judges have appointed themselves absolute dictators[12], dispensing their
539 own personal brand of ex post facto "justice" on an ad hoc basis— without respect for
540 the Constitution, our law, or the precedents of this Court.

541 In the abstract sense, the most important right impaired by this practice is our right to
542 rely on the plain text of the Constitution, statutory law, and binding court precedent as
543 authoritative statements of what "the law" is—offering "a clear guide for the conduct of
544 individuals, to enable them to plan their affairs with assurance against untoward
545 surprise." ***Moragne, 398 U.S. at 403***. Without it, America is indistinguishable from the
546 regime of the Emperor Caligula, where law was routinely applied on an ad hoc and ex
547 post facto basis. As Professor Story explains, the doctrine of stare decisis is the sine qua
548 non of 'a government of laws, not men'.

549    Courts of inferior jurisdiction can act only on pleadings sufficient to invoke their
550 power to act. Put another way, courts of inferior jurisdiction, i.e., "statutory" courts,
551 cannot act on generalities. They are limited to the specific framework of law.

552 Article III of that Constitution entrusted federal judges with the judicial Power—words
553 that actually had meaning. The Framers envisioned judges as interpreters of the law, as
554 opposed to its authors.

555    Alexander Hamilton explained that, to "avoid an arbitrary discretion in the courts;
556 it is indispensable that [our judges] should be bound by strict rules and precedents,
557 which serve to define and point out their duty in every particular case before them." ***The***
558 ***Federalist No. 78, at 470 (I. Kramnick ed. 1987) (A. Hamilton)***.

---

[12] Sam Stein, Kagan: In Bush v. Gore, Court Was Affected By Politics and Policy,
Huffington Post, May 19, 2010.

A century earlier, Lord Coke wrote that "[i]t is the function of a judge not to make, but to declare the law, according to the golden mete-wand of the law and not by the crooked cord of discretion." *1 E. Coke, Institutes of the Laws of England (1642)*. Jefferson crystallizes the thought with his usual brilliance: "Let the judge be a mere machine." *Thomas Jefferson, Letter (to Edmund Pendleton), Aug. 26, 1776*.

Common law judges in the eighteenth century were scarcely more than administrators and father confessors. While they ruled on the admissibility of evidence, all the real power rested with the jury. More importantly, the judges of the day understood and respected the limitations of their authority. Presided over by such notables as St. George Tucker, *Kamper v. Hawkins, 3 Va. 19 (Va. 1793)*, was the state-law precursor to *Marbury v. Madison*.

It was Judge Tucker's view that the judge may not stray beyond the narrowly-circumscribed bounds of his office:

If the principles of our government have established the judiciary as a barrier against the possible usurpation, or abuse of power in the other departments, how easily may that principle be evaded by converting our courts into legislative, instead of constitutional tribunals.

## CONCLUSION

WHEREFORE, for the above and foregoing reasons, Plaintiff respectfully requests that this Court: (1) GRANT Plaintiffs' Motion for Reconsideration; (2) VACATE this Court's November 26, 2013 order (Doc. #19); and (3) GRANT Plaintiffs' Motion for Summary Judgment (Doc. #16).

Respectfully submitted,

James Williams, real party in interest and owner of
JAMES A WILLIAMS TRUST

December 02, 2013

24