185 F.Supp.2d 274 (2002)

**UNITED PARCEL SERVICE OF AMERICA, INC., Plaintiff,**

v.

**The NET, INC., and Does 1 Through 10, Defendants.**

No. 99 CV 7059(ADS).

United States District Court, E.D. New York.

February 15, 2002.

*EXHIBIT 21A*

King & Spalding, Attorneys for the Plaintiff, New York, NY, Thomas H. Curtin, Esq., Of Counsel.

Keith Maydak, Pro Se, Versailles, PA, for the Defendants.

275  *275 **MEMORANDUM OF DECISION AND ORDER**

SPATT, District Judge.

On January 26, 2000, prior to the defendants' service of a responsive pleading, United Parcel Service of America, Inc. ("UPS" or the "plaintiff") filed the amended complaint in this case. The amended complaint alleges that The Net, Inc., ("The Net") and Does 1 through 10 (collectively, the "defendants") engaged in trademark dilution and infringement, unfair competition, deceptive business practices, cyberpiracy, and misappropriation of the plaintiff's goodwill, reputation, and business property. Presently before the Court are the following four motions: (1) a motion by The Net for reconsideration of the Court's April 16, 2001 order denying its motion to vacate the default and directing The Net to retain counsel; (2) a motion by one Keith Maydak, ("Maydak"), who claims to be the sole proprietor of The Net, for leave to intervene in as a defendant; (3) a motion by Maydak to compel service of the summons and amended complaint on him; and (4) a motion by Maydak to dismiss the complaint as moot.

## I. BACKGROUND

## A. *The Amended Complaint*

The following facts are taken from the amended complaint. UPS is a corporation that ships documents and packages throughout the United States and the world. Since August 21, 1973, the plaintiff has owned Registration No. 966,744 on the Principal Register of the United States Patent and Trademark Office ("USPTO") for the UPS mark covering the following services: "Transportation of personal property for hire by diverse modes of transportation." UPS has extensively promoted and advertised the delivery and shipping services it provides under the UPS mark. The registered UPS trademark "has acquired an outstanding celebrity symbolizing the substantial and material good will that the plaintiff has created for the mark UPS throughout the world" (amended complaint ¶ 9).

The Internet is a network of computers interlinked by telecommunication lines. An Internet domain ("domain") is a computer that "communicate[s] or interact[s] automatically with a remote sender of communications to the [d]omain over the Internet" (amended complaint ¶ 11). One type of domain is known as a World Wide Web Site ("web site"). Internet users access a domain, or a web site, by typing the web site's domain name, which consists of a certain alphanumeric sequence. All domain names end with a three-letter suffix, known as "generic top level domains," such as ".com", ".net", or ".edu". According to the amended complaint, a common way to find a company's domain is to type the company's trademark or name followed by one of the three-letter suffixes.

In the past few years, web sites have become "the hub of substantial amounts of commercial" activity (amendment complaint ¶ 12). Many companies offer their products and services over the Internet through their own established web sites or other domains. The amended complaint asserts that a company's use of an Internet domain has become "a material, substantial part of the marketing, promotion and sales of goods and services in this country" (amended complaint ¶ 13). The amended complaint contends that, therefore, a company's ability to use its registered trademark as its domain name for the web site operated by the company "is a material and substantial part of its opportunity to market, promote and sell products

and services through this burgeoning medium" (amended complaint ¶ 16).

276 Domain names are assigned to registrants on a first-come, first-served basis by *276 an organization known as the InterNIC. Until recently, but at all times pertinent to the events in this case, the InterNIC's domain name registration services were provided by Network Solutions, Inc. ("NSI"), a Virginia corporation.

On or about June 9, 1997, the defendants registered the domain name "ups.**net**" with the InterNIC through NSI. As a result, when an Internet user typed the name "ups.**net**", he reached the defendants' web site which featured "banner advertisements and link[ed the] web site with a pornographic web site" (amended complaint ¶ 22). The defendants completed NSI's registration agreement which purports to bind the registrants to the terms of NSI's "Domain Name Dispute Policy." That policy provides, in relevant part, that when a company registers a domain name with NSI, the registrant represents that, to the best of its knowledge, the domain name does not interfere with or infringe upon the rights of a third party.

The amended complaint alleges that the defendants had actual and constructive notice of the plaintiff's rights in the mark UPS before they registered the name "ups.**net**". The plaintiff has not licensed or authorized the defendants to use the mark UPS and has not authorized the defendants to register the domain name "ups.**net**".

On March 10, 1998, UPS learned that The **Net** had registered the domain name "ups.**net**" and sent The **Net** a letter demanding that it transfer its registration of the domain name to UPS. The defendants never responded to the UPS letter.

UPS contacted NSI and asked NSI to take action under its "Domain Name Dispute Policy." In a letter dated May 12, 1998, NSI wrote to the defendants, informing them of the plaintiff's complaint and directing them to comply with the procedures set forth in NSI's Domain Name Dispute Policy. The defendants did not respond to NSI's letter.

In a letter dated June 25, 1998, NSI informed the defendants that because they did not respond to NSI's May 12, 1998 letter, the "ups.**net**" domain had been placed on a "hold" status, thereby preventing anyone from using the domain name. On January 1, 2000, NSI reactivated all domain names that had been suspended or placed on hold. Pursuant to NSI's Domain Name Dispute Policy, NSI will not cancel, transfer, or otherwise change the defendants' domain name except with the consent of the defendants or in response to a **court** or arbitral order.

UPS contends that as long as the defendants retain the registration for the domain name "ups.**net**", UPS will not be able to create a web site with that domain name. UPS also alleges that the defendants have caused irreparable harm to the plaintiff's ability to use its own federally registered mark to identify its web site under the "**net**" generic top level domain, thereby preventing UPS from expanding its business via the Internet.

The amended complaint contains nine counts. As a first count, the plaintiff alleges that the defendants' conduct dilutes and detracts from the distinctiveness of the plaintiff's famous trademark, with consequent damage to the plaintiff and the business and goodwill symbolized by the mark, in violation of the Federal Trademark Dilution Act, 15 U.S.C. § 1125(c). In the second count, UPS contends that the defendant's registration and use of the domain name "ups.**net**" constitutes infringement of the plaintiff's federally-registered trademark in violation of Section 32(1) of the Lanham Act, 15 U.S.C. §

277 1114(1). The third and fourth counts allege that the defendants' conduct constitutes *277 unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and cyberpiracy in violation of the "Anticybersquatting Consumer Protection Act" (amending Section 43 of the Lanham Act). The fifth count alleges that the defendants' actions constitute common law trademark infringement and unfair competition, and the sixth count alleges that the defendants' conduct violates the **New York** Anti Dilution Statue, see Gen. Bus. Law § 360-1. In its seventh count, UPS asserts that the defendants acts constitute deceptive business practices in violation of Section 349 of the General Business Law. As an eighth count, UPS contends that the defendants' actions constitute misappropriation of the plaintiff's goodwill, reputation, and business property. The ninth count seeks a declaratory judgment.

## B. *The Procedural History*

As noted, UPS filed the amended complaint on January 26, 2000. In an order dated February 22, 2000, this **Court** granted a motion by UPS to extend the time in which to serve the summons and complaint to February 28, 2000.

In an order dated May 18, 2000, the **Court** granted a motion by UPS to deposit the original NSI Registrar Certificate, which registered the domain name "ups.**net**", into the Registry of the **Court**. The **Court's** order states that this deposit has the effect of tendering to the **Court** complete control and authority over the registration of the "ups.**net**" domain name registration record. The order also states that NSI agreed to deposit the Registrar Certificate with the Registry of the **Court**.

The order further provides:

> ... NSI shall maintain the *status quo* with respect to the domain name, which is currently on "Hold" and cannot be used, until further temporary or final order of this Court. [NSI] shall not make any change to the registration of the aforementioned domain names unless and until this Court renders a decision regarding the competing interests therein.

On June 22, 2000, the Court received an affidavit of service stating that on May 31, 2000, Gianfranco Mitrione served copies of, among other things, the amended summons and complaint on: (1) The Net, Inc., at 1344 Broadway, Suite 211, Hewlett, New York, 11557; and (2) The Net, Inc., c/o Randy Esptein, 7333 Ashley Shores Circle, Lake Worth, Florida, 33467.

In a notice dated February 21, 2001, the Court advised counsel for the plaintiff that there had been no activity in this case since September 11, 2000, and asked counsel to inform the Court by March 8, 2001, why an order should not be entered dismissing the action for failure to prosecute pursuant to Rule 41(b) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.").

In a motion dated March 5, 2001, UPS requested that the Court enter a judgment of default against the defendants pursuant to Rule 55 of the Fed.R.Civ.P. UPS filed an affidavit of service which indicated that on March 8, 2001, the motion for the entry of a default judgment had been served on The Net, Inc., at "1344 Broadway, Suite 211, Hewlett, New York, 11557" and at "c/o Randy Epstein, 7333 Ashley Shores Circle, Lake Worth, Florida, 33467." On March 16, 2001, the Clerk of the Court issued a Clerk's Certificate noting The Net's default.

In a letter dated March 13, 2001, Maydak informed the Court that (1) he is the proprietor of The Net; (2) he was willing to accept service on behalf of The Net; (3) he wished to appear on behalf of The Net; (4) he had learned of the lawsuit from a third party; (5) he had not received any of the papers that had been filed in the case; and (6) he wanted to file a motion to 278 *278 dismiss the complaint on the ground that the plaintiff failed to properly serve copies of the summons and complaint.

On March 26, 2001, the Court received a "Notice of Appearance for The Net, Inc., and John Doe 1." The notice states, "Defendant The Net, Inc., by and through it sole proprietor, Keith Maydak, sued as John Doe I, *pro se,* notifies the Court and the parties that they appear specially in this action as defendants to challenge sufficiency of service and personal jurisdiction." The notice also sets forth the defendants' address as 500 Lincoln Highway, N. Versailles, PA 15137. In addition to the Notice of Appearance, the Court received a motion from Maydak to strike the default that had been entered against The Net.

In an order dated April 16, 2001, the Court denied Maydak's motion to strike the default that had been entered against The Net. The Court stated that Maydak had filed the motion on behalf of The Net. However, Maydak is not an attorney and, therefore, is precluded from representing a corporation, partnership, or association, such as The Net. Accordingly, the Court denied Maydak's motion to strike the default without prejudice and with leave to renew upon retaining counsel to represent The Net. The Court also ordered that, in light of the fact that The Net filed papers indicating its willingness to defend this action, the plaintiff's motion for the entry of a default judgment would be held in abeyance for 30 days so that The Net could retain counsel. The Court further ordered that if after 30 days, The Net failed to establish that it had retained counsel, the Court would enter a default judgment against The Net.

On May 18, 2001, the Court received four undated motions from Maydak: (1) a motion by The Net, Inc., by and through its sole proprietor, Maydak, for reconsideration of the April 16, 2001 order of the Court directing The Net to appear through counsel; (2) a motion by Maydak to compel service of the complaint on him as the real party in interest; (3) Maydak's motion for leave to intervene as a defendant in the case; and (4) Maydak's motion to dismiss the complaint as moot, because the domain name, "ups.net" is no longer registered to The Net, Inc.

In a letter dated May 16, 2001, counsel for the plaintiff argues that Maydak's motions are in violation of Local Civil Rule 7.1, 7.2 and 37.3(a), because they are not accompanied by a supporting affidavit or legal memoranda. UPS argues that the Court should deny The Net's motion for reconsideration, because the motion is untimely and The Net failed to demonstrate that it had retained counsel. UPS states that it is prepared to oppose the other relief requested by The Net if the Court chooses to entertain any of the Maydak's motions.

UPS agrees with Maydak that during the pendency of this litigation, a third party registered the "ups.net" domain name through a domain name registrar other than NSI. UPS argues that because the Court previously ordered UPS to deposit the original Registrar Certificate for the "ups.net" domain name issued by NSI into the Registry of the Court, the Court has complete control and authority over the registration of the "ups.net" domain name. UPS states that it intends to pursue the current domain name registrant and responsible domain name registrar for contempt of this Court's May 18, 2000 order.

This decision addresses the four motions submitted by Maydak and the opposition papers submitted by UPS

## II. *DISCUSSION*

279 The first issue before the **Court** is whether to entertain Maydak's motions. *279 UPS correctly points out that none of Maydak's submissions is supported by an affidavit or memorandum of law, and none of them specifies the rules or statutes upon which it is based. Although these omissions mean that Maydak's motions are in violation of Local Civil Rules 7.1 and 7.2, the **Court** declines to reject them on that basis. The submissions of a *pro se* litigant should be held "'to less stringent standards than formal pleadings drafted by lawyers.'" Hughes v. Rowe, 449 U.S. 5, 9, 101 S.Ct. 173, 176, 66 L.**Ed.2d** 163 (1980) (per curiam) (quoting Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.**Ed.2d** 652 (1972)); *see also* Ferran v. Town of Nassau, 11 **F**.3d 21, 22 (**2d** Cir.1993). Furthermore, the **Court** must make reasonable allowances so that a *pro se* plaintiff does not forfeit rights by virtue of his or her lack of legal training. See Traguth v. Zuck, 710 **F.2d** 90, 95 (**2d** Cir.1983). Accordingly, the **Court** will consider Maydak's four motions despite the fact that they do not contain affidavits, memoranda, or legal support.

## A. The Motion for Reconsideration

Maydak moves for reconsideration of the **Court's** April 16, 2001 order directing The **Net** to retain counsel, denying his motion to vacate the default, and holding in abeyance the plaintiff's motion for a default judgment. Maydak asserts that The **Net** should not be required to retain counsel because it is a sole proprietorship, not a corporation, partnership, or association. He claims that he is the sole owner of The **Net**, which exists only as his alter ego. He states that "no corporation papers [have been filed], no partnership papers produced, nor any formation papers of an association." Maydak also states that he is the real party in interest and has not been served with a copy of the summons and complaint in this case. For these reasons, Maydak requests that the **Court** reconsider the order directing The **Net** to obtain counsel.

UPS argues that the **Court** should reject Maydak's motion for reconsideration, because it was not timely filed. Motions for reargument are governed by Rule 6.3 of the Local Rules of the **United** States Courts for the Southern and Eastern Districts of **New York**. Local Rule 6.3 provides as follows:

> A notice of motion for reargument shall be served within ten (10) days after the docketing of the **court's** determination of the original motion. There shall be served with the notice of motion a memorandum setting forth concisely the matters or controlling decisions which counsel believes the **court** has overlooked. No oral argument shall be heard unless the **court** grants the motion and specifically directs that the matter shall be reargued orally. No affidavits shall be filed by any party unless directed by the **court**.

The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the **court** overlooked— matters, in other words, that might reasonably be expected to alter the conclusion reached by the **court**." Shrader v. CSX Transportation, Inc., 70 **F**.3d 255, 256-57 (**2d** Cir.1995) (citations omitted). The difficult burden imposed on the moving party has been established "in order to dissuade repetitive arguments on issues that have already been considered fully by the **Court**." Ruiz v. Commissioner of the D.O.T. of City of **New York**, 687 **F.Supp**. 888, 890 (S.D.N.Y.1988), *modified on other grounds*, 934 **F.2d** 450 (**2d** Cir.1991). To grant such a motion means that a **Court** must find that it overlooked "matters or controlling decisions" which, if 280 it had considered *280 such issues, "would have mandated a different result." Durant v. Traditional Investments, Ltd., 88 CV 9048, 1990 WL 269854 (S.D.N.Y. April 25, 1990).

Local Rule 6.3 clearly states that motions for reargument or reconsideration shall be filed within 10 days of the after the docketing of the **court's** determination of the original order. The order at issue here was docketed on April 21, 2001. Therefore, Maydak's request for reconsideration, which was filed on May 18, 2001, is untimely under Local Rule 6.3. However, given that Maydak filed his request within the 30 day period in which the **Court** permitted The **Net** to retain counsel and that Maydak is not represented by counsel, the **Court** will consider his motion for reconsideration timely filed.

It appears that Maydak argues that the **Court** overlooked his allegation that The **Net** is not a corporation, partnership, or association when denied Maydak's motion to vacate the default and directed The **Net** to retain counsel. Among the papers the **Court** considered when it entered the April 16, 2001 was Maydak's March 13, 2001 letter, in which he states that he is the proprietor of The **Net** and is willing to accept **service** on behalf of The **Net**. Although UPS named the defendant as "The **Net**, Inc.", it does not dispute Maydak's claim that he is the sole owner and proprietor of The **Net**. Thus, based on Maydak's assertion and the absence of an objection by UPS, the **Court** finds that The **Net** is a sole proprietorship solely

owned by Maydak. As such, Maydak, as the sole owner of The Net, can represent The Net pro se in federal court. See Kraebel v. **New York** City Dep't of Housing Preservation and Development, **2002** WL 14364 *4, n. 5 (S.D.N.Y. Jan.3, **2002**) (holding that the plaintiff's pro se status was acceptable because a sole proprietorship may be represented by its owner); Pension Benefit Guaranty Corp. v. Viking Food **Service**, Inc., 1994 WL 702042 *1 (S.D.N.Y. Dec.14, 1994) (stating that sole proprietors are entitled to represent themselves pro se). The **Court** notes that if, during the course of the litigation, it becomes clear that The **Net** is a corporation, partnership or association, or has taken on an existence separate from Maydak, The **Net** will be required to retain counsel. However, it appearing that The **Net** is as sole proprietorship, Maydak's motion for reconsideration is granted, and the **Court's** April 16, 2001 order is vacated.

## B. The Motions for a Default Judgment and to Vacate the Default

Because The **Net** is currently in default, the next issue before the **Court** is whether that default should be vacated.

Rule 55(c) of the Fed.R.Civ.P. provides that "[f]or good cause shown the **court** may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." Relief from default is to be granted at the discretion of the **court** upon consideration of the individual circumstances of the case and the credibility and good faith of the parties. See Enron Oil Corp. v. Diakuhara, 10 **F**.3d 90, 95 (**2d** Cir.1993). In determining a motion to vacate a default, the **Court** focuses on three considerations with regard to the meaning of "good cause." These factors are: (1) the willfulness of the default; (2) the potential prejudice to the adversary; and (3) the presentation of a meritorious defense. See In re Chalasani, 92 F.3d 1300, 1307, (**2d** Cir.1996) (citing In re Men's Sportswear, Inc., 834 **F**.2d 1134, 1138 (**2d** Cir.1987)); American Alliance Ins. Co., Ltd. v. Eagle Ins. Co., 92 **F**.3d 57, 59 (**2d** Cir.1996); Enron Oil, 10 **F**.3d at 96. Other equitable

281 factors that may be considered include whether the failure to follow *281 a rule of procedure was a mistake made in good faith and whether the entry of default would bring about an unfair result. See Enron Oil, 10 **F**.3d at 96.

The Second Circuit strongly prefers dispute determination on the merits and directs district courts to resolve any doubts regarding vacatur of a default in favor of a trial on the merits. See Shah v. **New York** State Dept. of Civil **Service**, 168 **F**.3d 610, 615 (**2d** Cir.1999); Cody v. Mello, 59 **F**.3d 13, 15 (**2d** Cir.1995); Enron Oil, 10 **F**.3d at 95. Indeed, that **Court** has recognized that "dismissal is a harsh remedy to be utilized only in extreme situations." Cody, 59 **F**.3d at 15 (internal quotations omitted). The **Court** resolves doubts in the movant's favor so that the case may be resolved, if possible, on the merits. Enron Oil, 10 **F**.3d at 95-96.

It is within this framework that the **Court** examines Maydak's motion to vacate The **Net's** default. Maydak submits that he was never served with a copy of the summons and complaint. The **Court** notes that UPS served the summons and complaint on The **Net** at a **New York** address The **Net** had provided to NSI when it registered the domain name "ups.**net**." Because that address was a mailbox drop, UPS also served The **Net** by mailing a copy of the summons and complaint to one Randy Epstein, to whom the mailbox had been registered. Despite the efforts made by UPS to locate The **Net's** mailing address, Maydak now states that he should have received **service** on behalf of The **Net** at an address in Pennsylvania. Although these factual circumstances may suggest an attempt to avoid having an address at which The **Net** could be served with **service** of process and other legal documents, the **Court** cannot make any such finding based on the allegations before it.

However, the **Court** can, and does, find that the fact that The **Net** moved to vacate the default 10 days after the default was noted and before a judgment was entered lends credibility to Maydak's assertion that he never received notice of the lawsuit. This allegation, taken together with the fact that the **Court** must resolve all doubts in favor of a trial on the merits, see Enron Oil, 10 **F**.3d at 95-96, Sony Corp. v. Elm State Elecs., Inc., 800 **F**.2d 317, 320 (**2d** Cir.1986), leads the **Court** to find that the defendant's default was not willful.

The **Court** finds that vacating the default will not prejudice UPS. Although granting the defendant's motion will cause the plaintiff some delay, this alone is insufficient to establish prejudice. See Enron, 10 **F**.3d at 98; Davis, 713 **F**.2d at 916. Notably, for five months, the plaintiff took no steps to advance this litigation. Indeed, UPS filed the motion for a default judgment only after receiving a notice from the **Court** that the action would be dismissed for failure to prosecute. Given that the parties have accomplished so little in the two years that this case has been pending, the **Court** finds that vacating the default will not prejudice UPS.

282 Finally, the **Court** finds that the defendant has set forth assertions of a meritorious defense that are sufficient to warrant vacating the default. To set aside a default, the movant must present some evidence demonstrating "that if relief is granted the outcome of the suit may be different than if the entry of default or the default judgment is allowed to stand.'" In re Martin-Trigona, 763 **F**.2d 503, 505 n. 2 (**2d** Cir.1985). The defendant is not required to establish the validity of a defense, but

instead "must support its general denials with some underlying facts." Sony Corp., 800 F.2d at 320-21. Here, the defendant argues that the case is moot. Maydak states that in October 2000, The **Net's** contract with NSI expired, and the domain name "ups.**net**" became available *282 to the public at large. Maydak argues, therefore, that the relief sought by the plaintiff, namely a declaratory judgment enjoining The **Net** from using the domain name "ups.**net**", is no longer available to the plaintiff. Maydak's argument constitutes a meritorious defense for the purposes of vacating a default judgment.

Thus, the **Court** finds that The **Net's** default was not willful; setting aside the default will not prejudice UPS; and The **Net** has alleged a meritorious defense. As such, Maydak's motion to vacate the default is granted, and the motion by UPS for a default judgment is denied.

## C. The Remaining Motions

The following motions remain before the **Court**: (1) a motion by Maydak to compel UPS to serve a copy of the summons and complaint on Maydak at his Pennsylvania address; (2) a motion by Maydak for leave to intervene as a defendant; and (3) a motion by Maydak to dismiss the complaint as moot. In opposition, UPS requested that in the event the **Court** denies its motion for a default judgment, UPS be given time in which to oppose Maydak's motions on the merits.

In regard to Maydak's motion to compel **service** of process, it appears that despite UPS's attempts to locate and serve The **Net**, neither Maydak nor The **Net** received a copy of the summons and amended complaint. In the interest of justice, the **Court** grants Maydak's motion to compel the plaintiff to re-serve the summons and amended complaint on Maydak. UPS is directed to mail copies of the same, by March 1, **2002**, via certified mail, return receipt requested, to Keith Maydak, c/o Chrissy's News, 500 Lincoln Highway, N. Versailles, PA 15137.

In regard to Maydak's motion for leave to intervene as a defendant and his motion to dismiss the complaint as moot, those motions are denied without prejudice and with leave to refile, so that UPS may have an opportunity to respond to the merits of those motions. Furthermore, UPS is directed to show cause, by filing and serving an affidavit and memorandum of law no later than March 12, **2002**, demonstrating: (1) why the caption of the complaint should not be amended to read "**United Parcel Service** of **America**, Inc., against Keith Maydak d/b/a The **Net**, Inc., John Doe 1 and John Doe 2"; (2) why this case should not be dismissed as moot; and (3) why the **Court** should not issue an order releasing NSI's Registrar Certification for the domain name "ups.**net**" from the Registry of the **Court**. Maydak shall file his opposition papers, if any, no later than March 26, **2002**.

## III. *CONCLUSION*

Based on the foregoing, it is hereby

ORDERED, that the defendant's motion for reconsideration is GRANTED; and it is further

ORDERED, that this **Court's** April 16, 2001 order is deemed VACATED; and it is further

ORDERED, that the plaintiff's motion for a default judgment is DENIED; and it is further

ORDERED, that the defendant's motion to vacate the default is GRANTED, and that default is vacated; and it is further

ORDERED, that the defendant's motion to compel **service** of the summons and amended complaint is GRANTED; and it is further

ORDERED, that UPS is directed to serve a copy of the summons and amended complaint on Maydak by mailing a copy of the same to him via certified mail, return receipt requested at the following address on or before March 1, **2002**:

*283 Keith Maydak c/o Chrissy's News 500 Lincoln Highway N. Versaille, PA 15137

and it is further

ORDERED, that Maydak is directed to respond to the summons and amended complaint by complying with the Federal Rules of Civil Procedure, the Local Rules, and this **Court's** Individual Rules; and it is further

ORDERED, that UPS is directed to show cause by filing this **Court** and serving a memorandum of law by March 12, **2002**, demonstrating: (1) why the caption of this case should not be amended to read, "**United Parcel Service** of **America**, Inc., against Keith Maydak d/b/a The **Net**, Inc., John Doe 1 and John Doe 2A"; (2) why the complaint in this case should not be

dismissed as moot; and (3) why the **Court** should not issue an order releasing NSI's Registrar Certification for the domain name "ups.**net**" from the Registry of the **Court**; and it is further

ORDERED, that Maydak is directed to file and serve any opposition papers on or before March 26, **2002**; and it is further

ORDERED, that Maydak's motions for leave to intervene and to dismiss the complaint are DENIED without prejudice and with leave to refile; and it is further

ORDERED, that the parties are directed to contact **United** States Magistrate Judge Arlene Rosario Lindsay forthwith to proceed with discovery.

SO ORDERED.

Save trees - read court opinions online on Google Scholar.